SCHWARTZ ET AL., APPELLANTS, *v.* WELLS ET AL., APPELLEES.

(No. 466—Decided January 6, 1982.)

*Messrs. Lindhorst & Driedame* and *Mr. Leo J. Breslin,* for appellants.

*Messrs. Kohnen & Kohnen* and *Mr. W. Andrew Patton,* for appellees.

*Per Curiam.* This cause came on to be heard upon appeal from the Court of Common Pleas of Warren County.

Plaintiffs-appellants brought this action for personal injuries and loss of consortium arising out of a motor vehicle accident. After five days of trial, the jury rendered a general verdict in favor of all defendants-appellees. In due time appellants moved for a new trial, which motion was overruled. This appeal asserts a single assignment of error, to-wit: the overruling of the motion for new trial.

In their briefs appellants contend that the trial court erred in five respects in failing to sustain their motion for a new trial:

"1. In a case where the facts are complicated as to position of vehicles immediately prior and after a collision, and the jury would have been substantially aided by viewing the scene of the accident, it is error for the trial court to refuse a view of the scene.

"2. It is prejudicial error for the trial court not to admit evidence of a witness' criminal record and his prior inconsistent statements made during deposition concerning his criminal record to impeach the credibility of the witness.

"3. It is prejudicial error for a trial court not to prevent misconduct of counsel asking improper questions which it knows to be prejudicial or to correct the impression given by prejudicial questions through proper instructions.

"4. It was prejudicial error by the

trial court in granting an improper charge on assumption of risk which allowed the jury to draw an incorrect inference from the facts in the case.

"5. The jury verdict created a manifest injustice because it was against the manifest weight of the evidence."

The first, third and fourth claims of error for the trial court's refusal to grant a new trial may be disposed of with brief comment. None of them is well taken for essentially the same reason.

It cannot be said that the trial court *refused* to authorize the jury to visit the scene of the accident, simply because there is nothing in the transcript of proceedings befor' us that indicates the trial judge was ever asked by counsel for any party to grant a view of that scene. The judge cannot be expected to know the trial tactics of counsel, or to be sufficiently familiar before trial with the facts of the case to be able to determine on his own motion whether a view would in any way assist the jury. If such a visit is desired, the parties, through their counsel, have a duty to request it, which was not done here.

We observe also that R.C. 2315.02, which permits the court to have the jurors visit the scene, does not mandate that visit even if requested. Case law generally has held that the granting of a visit is discretionary with the court, 52 Ohio Jurisprudence 2d 531-532, Trial, Section 52. There certainly can be no abuse of discretion if a visit to the scene was not even requested.

As to the third claim, the record does establish that counsel for the appellees, in examining a police officer, did indeed ask a clearly improper question, one which may be assumed to have prejudicial implications. Counsel for appellants promptly objected, and that objection was sustained. After the objection was sustained, counsel did not either move for a mistrial or request cautionary instructions. Counsel for appellees did not pursue that line of questioning, and the trial proceeded without any further reference to the improper subject.

The rule of law applicable is found in *Stores Realty* v. *Cleveland* (1975), 41 Ohio St. 2d 41, at 43 [70 O.O.2d 123]:

"Ordinarily, errors which arise during the course of a trial, which are not brought to the attention of the court by objection or otherwise, are waived and may not be raised upon appeal."

It is well settled that if error is committed in the trial of a case, the trial court should be given the opportunity at the time to correct that error. That was not done here, and thus the claimed error is held not to be well taken.

The fourth claim questions the propriety of a charge to the jury on assumption of risk. We do not need to determine whether that charge was proper or not since we are governed by the provisions of the second paragraph of Civ. R. 51(A):

"A party may not assign as error the giving or the failure to give any instruction unless he objects thereto before the jury retires to consider its verdict, stating specifically the matter to which he objects and the grounds of his objection. * * *"

The transcript before us does not reveal whether any conference regarding the substance of the court's charge to the jury took place before that charge was given. It does establish that shortly before the charge was concluded the court asked whether counsel for either side had any comments for the record. The record does establish that some kind of side-bar conference took place, all of which was off the record. The record does not show any objections to the charge having been made by appellants' counsel. We must therefore conclude that the claimed error cannot now be asserted.

The second claimed error involved the trial court's refusal to permit appellants' counsel to cross-examine the appellee Oakes regarding an inconsistent statement made in a previously taken deposition. On cross-examination at the trial Oakes was asked if he had ever been con-

victed of a state or federal offense, to which question he replied in the negative. When counsel sought to impeach this testimony via a previously taken deposition, opposing counsel objected, at which point the transcript indicates that an off-the-record side-bar conference took place. The transcript does not indicate that the judge ever ruled on the objection, and the reference to the side-bar conference is followed immediately by a proffer. The proffer included the following:

"* * * Referring to your deposition of December 29, 1978, were you asked the question * * * 'Anything else? Do you know what I mean by a crime, a State crime?' Answer: 'Yeah, No, except once for a check, that was it.' * * * Question: 'When was the check charge?' Answer: 'Oh, God, that goes back about 1956.' Question: 'Were you convicted of —' Answer: 'I had about $45,000 in checks out and the company took me for $65,000, their check bounced on my account, so I made up $45,000 in checks that was no good by selling equipment. * * *' "

If the judge had admitted this evidence, he would not have erred. *Harper* v. *State* (1922), 106 Ohio St. 481; *State* v. *Murdock* (1961), 172 Ohio St. 221 [15 O.O.2d 372]. The question is whether he erred prejudicially by his exclusion of such evidence. In support of their claimed error, appellants rely primarily on *Kornreich* v. *Industrial Fire Ins. Co.* (1936), 132 Ohio St. 78 [7 O.O. 198], where a reversal was ordered because of the exclusion of evidence regarding a successful plaintiff's prior confession of his participation in a conspiracy to commit arson.

*Kornreich* was a suit to recover on a fire insurance policy. One of the insurance company's defenses was that the plaintiffs had engaged in a conspiracy to defraud the company. While recognizing that the questions regarding Kornreich's confession were collateral to the issue of the case, the court held they were competent as a means of testing his credibility.

The reason for reversal is stated in *Kornreich, supra,* at 92:

"Ordinarily this court does not concern itself with questions of credibility, being content to leave such questions to the court below, where they properly belong; but, where a ruling of a court of inferior jurisdiction, if permitted to go unnoticed, would operate as a shield for the evil-minded, the furtherance of justice requires a court of last resort to announce the true rule of law, even where the question involved is no more serious than that of credibility."

From the above quotation, it is apparent that the Supreme Court considered the admissibility of evidence collateral to the issue being tried and pertinent only with respect to the credibility of the witness' testimony to be a matter ordinarily within the discretion of the trial court. Whether or not a refusal to receive such evidence constitutes an abuse of discretion depends upon whether under the general factual posture of the case tried it can be said the complaining party was denied a fair trial. Assuming the trial court erred in its evidentiary ruling, the totality of the facts of the particular case under review must be examined to determine whether the error was prejudicial. See Civ. R. 61.

*Kornreich* is readily distinguishable from the case at bar on its facts. There the claim was against an insurance company for a fire loss, the defense alleged a fraudulent conspiracy, and the rejected credibility testimony involved a previous confession of the witness as to his having committed arson. The close connection between arson and an insurance claim for a fire loss is readily apparent. Further, it does not appear that the *Kornreich* witness could be otherwise effectively cross-examined to test his credibility. In the case at bar, the previous conviction, if that is what the proffered testimony tended to establish, was based upon an insufficient fund check charge — not at all related to a motor vehicle accident — that

took place more than twenty years ago. Moreover, here there was not only ample opportunity to cross-examine the witness, but the event itself was witnessed by two other persons who also testified. Accordingly, we conclude that if error occurred because of the court's refusal to permit the proffered testimony to go to the jury, that error was harmless, and not a ground for granting a new trial or vacating a judgment.

Finally, appellants contend that the trial court erred in its failure to grant a new trial for the reason that the verdict of the jury was against the manifest weight of the evidence. The question of whether to grant a new trial upon the basis of the weight of the evidence is within the sound discretion of the trial court. *Rohde* v. *Farmer* (1970), 23 Ohio St. 2d 82 [52 O.O.2d 376]. Where a new trial was granted, it has been held that the term "abuse of discretion" connotes more than an error of law or of judgment; it implies an unreasonable, arbitrary or unconscionable attitude on the part of the court. *Steiner* v. *Custer* (1940), 137 Ohio St. 448 [19 O.O. 148]. We consider the same connotation to apply when the motion for a new trial has been denied.

Briefly, the evidence established that the appellees were operating their tractor-trailer trucks in a westwardly direction on U. S. Route 52 in Clermont County, with the appellee Oakes being in front of the appellee Wells. The appellant, Louis J. Schwartz, had passed the Wells truck, and finding the road in front of him blocked by the Oakes truck, and noting the rapid approach of the Wells truck, attempted to avoid being hit by the Wells truck by driving to his left. The maneuver was unsuccessful, and he was indeed struck from the rear by Wells.

We observe from our review of the record that the jury was clearly justified in finding for the appellee Oakes, and, insofar as the verdict for Oakes was concerned, the trial court was clearly correct in overruling appellants' motion for a new trial. As to the appellee Wells, the evidence requires a more detailed analysis.

The first witness to testify as to the actual accident was appellee Wells when he was called as upon cross-examination:

"Q. O.K., and as you approached the bridge on U.S. 52 near the residence which is known as the Mackey residence did you hit this Pinto in the rear end?

"A: Yes, sir, after he passed me."

Later on, via direct examination, he testified as follows:

"Q. O.K. Now what part of the automobile did your truck strike?

"A: Left rear corner."

Thus, by his own admission, Wells was operating his truck in violation of R.C. 4511.21(A), unless his assured clear distance was suddenly cut off by appellant's precipitous entry into his path of travel, so that he was unable, in the exercise of ordinary care, to avoid the collision. *Erdman* v. *Mestrovich* (1951), 155 Ohio St. 85 [44 O.O. 97]; *Sheres* v. *Smith* (1951), 155 Ohio St. 567 [44 O.O. 506].

As to whether or not Schwartz suddenly drove his vehicle into the path of Wells' truck, the evidence is conflicting. Schwartz testified as follows:

"Q. And approximately how far east of the bridge was it when you passed the first truck that you were behind?

"A: Approximately eight-tenths of a mile.

"* * *

"Q. And after you passed the truck that was immediately in front of you, what did you do then after you passed that truck?

"A: I was following the other truck and attempting to take the license number.

"Q. OK. So, at this point in time, were you between the two trucks?

"A: Yes, sir.

"Q. OK, and approximately how long were you — how far did you travel between the two trucks?

"A: Three-tenths of a mile."

On the other hand, Wells testified:

"Q. Now, from the point that the Pinto pulled back in after the first attempt to the point of the accident, would you describe for the ladies and gentlemen of the jury exactly what you saw and what happened up to the point of impact?

"A: Well, he came around me, and I looked down. He had a pencil and piece of paper. I guess he was trying to get the license number, and he cut me off. He cut right back in front of me.

"Q. Now, do you know what the speed of that car was at that time?

"A: I would say over 50 because that was what I was running. He had to be going over that.

"Q. Now, when you say he cut you off, could you describe how far the car was from your car at that time?

"A: Very close.

"Q. And did you take any action as a result of that at that time?

"A: I let off the fuel when he came around me. If I hadn't, he would have probably hit me.

"Q. The impact didn't occur at that time, did it?

"A: Soon after that, real quick after that.

"Q. OK. How long a period of time would you say transpired?

"A: Just seconds, just like that.

"Q. Could you describe what occurred between that time and the point of impact, what you saw and what you did?

"A: Well, he swerved — he went out of control. He slid like this (indicating) sideways.

"Q. Now, did you take any action at that time?

"A: Stood up on the brakes to keep from hitting him.

"Q. OK. Now, what part of the automobile did your truck strike?

"A: Left rear corner."

Which version of what occurred to believe is clearly a question for the determination of the jury. So long as there is a real conflict in the evidence in the sense that reasonable men might honestly vary in their conclusions as to whether, on the whole record, the judgment rendered below is or is not supported by the evidence, such judgment will not be disturbed by the reviewing court. 5 Ohio Jurisprudence 3d 206, Appellate Review, Section 606. We observe that the jury's verdict was not tested by interrogatories. Thus, we do not know whether the verdict was based on the jury's finding that Wells was not negligent in the operation of his truck or whether it was based on a finding that appellant Schwartz was contributorily negligent and that such negligence proximately contributed to the damages of which he complains. On our review of the whole record we accordingly conclude that the verdict of the jury was supported by credible evidence, and that no manifest injustice has been done.

The judgment of the court of common pleas will therefore be affirmed.

*Judgment affirmed.*

HENDRICKSON, P.J., KOEHLER and ZIEGEL, JJ., concur.

ZIEGEL, J., retired, of the Court of Common Pleas of Preble County, was assigned to active duty under authority of Section 6(C), Article IV, Constitution.