DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Dwayne Keller was convicted of possessing cocaine, in violation of R.C. 2925.11, and drug paraphernalia, in violation of R.C. 2925.14, and of violating the open container statute, R.C.4301.62. The first two charges were submitted to the jury and the third was determined solely by the judge. Keller has appealed from his convictions.
Keller has asserted that the trial court erred because his convictions for possession of cocaine and possession of drug paraphernalia (1) were against the manifest weight of the evidence and (2) were not supported by sufficient evidence.[1] Keller has not challenged his open container conviction. Both assignments of error are overruled and the judgment of the trial court is affirmed.
 I
According to the witnesses for the state, Officer Rodney Criss was on patrol as part of the Gang Unit when he noticed a maroon van that had a burned out light over the license plate.[2] He and his partner signaled the driver of the vehicle to stop by turning on their overhead lights. When the van did not pull over immediately, as expected, the officers turned the siren on twice. The driver of the van, later identified as Keller, motioned to the left, drove about two blocks, then made a left-hand turn before pulling over. Officer Criss and his partner, Officer Tim Givens, approached the car. Officer Criss saw an open bottle of beer through the passenger window. On that basis, the officers arrested Keller and placed him in the back of their cruiser.
Officer Criss returned to the driver's side of the vehicle and "immediately noticed * * * a small piece of Chore Boy in the door." He later described the location as "that little pocket there so that if you opened the door, closed it, you would touch it." As a result of finding the Chore Boy, Officer Criss realized that "there was a possibility that there was drug activity involved * * * [b]ecause [Chore Boy is] a common drug paraphernalia used with crack cocaine." Officer Criss explained that Chore Boy is used as a filter in a small circular pipe, perhaps a section of an antenna, to prevent the hot rock from being inhaled while it is being smoked. He also testified that this particular piece of Chore Boy appeared to have been burnt, and to have been "cut into strings and meshed together as in a pad." Officer Givens explained that it is common to char the Chore Boy so that the taste of the copper does not interfere with the enjoyment of the crack cocaine. When questioned about whether it could have been blackened by some other means, Officer Givens responded, "I know it's charred Chore Boy. I felt charred Chore Boy hundreds of times * * * I can tell by looking at it and feeling it." When Officer Criss was asked if he had "prior arrest experience with individuals who use Chore Boy and antenna for smoking or pipes" he responded "hundreds." Officer Criss also testified that he had had special training in drug identification and arrests.
Robert Velten, an employee of the Bureau of Criminal Investigation, testified that he did not test the piece of Chore Boy for the presence of cocaine because it had been bagged with the rock of crack cocaine. Any subsequent test would have been unable to distinguish between cocaine residue from use and cocaine residue from having bumped into the rock in the evidence bag.
In light of his experience and training, the discovery of a small piece of blackened Chore Boy prompted Officer Criss to start looking for drugs. He found "what appeared to be crack cocaine on the floorboard of the van right there where the feet of the driver would have been." When questioned later about whether he could have tracked it in on his own feet, Officer Criss responded, "No, ma'am. I did not enter the vehicle with my feet at all when I found the piece of crack cocaine." Officer Givens performed a field test on the substance, which determined presumptively that it was cocaine. Later tests confirmed its composition. Officer Criss testified that the .08 gram piece of cocaine that was recovered had a value of $15 to $20 on the street. He described how an individual would smoke the crack form of cocaine, and indicated that the rock recovered was "a normal size of a piece of crack cocaine that we would have found on somebody that would use it to get high."
Keller's fiancée, Sandra Crossan, testified in his defense. According to Crossan, Keller cut off a chunk of Chore Boy and used it to scrape the old sealer off the head gasket on her car so that he could replace the gasket. Although she did not know what happened to the Chore Boy after he used it, she "assume[d] he just put it back in his tools. * * * If there's more use out of it, don't throw it away." According to her, Keller kept some Chore Boy in his toolbox and "any other place that he might just pitch it inside his van."
Keller also testified in his own defense. According to Keller, he did not pull over immediately when the police signaled him because, "I know you're supposed to pull to the right, you know, but there was traffic, it was nighttime, the lights were going, it was blaring me in my eyes, making blur in my eyes. * * * I turned the first left possible, the very first left."
Keller testified that Officer Criss got "[i]nside the van and outside of the van several times repeatedly," while Keller was in the back of the cruiser. According to Keller, "after all was said and done, [Officer Criss] brought back a little piece of what he said was cocaine." He indicated that Officer Criss "never brought [any Chore Boy] back and showed [it to him.]" Keller testified that he works "with a lot of tacky materials * * * [and] all kinds of substance that gets in the bottom of my shoes." He agreed with the suggestion of his attorney that his shoes "track — all those various places you go, when you go to work, you can track anything on the bottom of your shoes[.]" He asserted that if he had been aware that crack cocaine was in there,
 [I]t would be out the window — if I knew that I was in possession of cocaine and these officers were going to pull me over, I would either spit it out the window or throw it somewhere else. I would not throw it in the front floor, front of me where they're obviously going to find it, because that's ludicrous, is how I see it. It's crazy. It's insane.
With respect to the small piece of Chore boy, Keller denied any knowledge of "that small of a piece, but I usually keep pieces, like Sandy testified." He admitted to general knowledge that Chore Boy was in the van. He explained that he used the Chore Boy to "scrape the goop out" of the grooves so the new gasket would fit properly. He agreed with the suggestion by the state that "this Chore Boy that we've seen here is likely to be yours because it looks like it's got all this grease and stuff on it."
In response to questions from his attorney, Keller testified that in 1992 he pled guilty to, and was convicted of, aggravated robbery. He also testified that he had not been charged with any other offenses "in the past few years." When questioned on cross examination, Keller admitted that during roughly the same time frame he had also been convicted of receiving stolen property, vandalism, breaking and entering, and a misdemeanor theft offense. The misdemeanor theft offense occurred approximately a year before the current arrest.
On direct examination, Keller admitted past drug and alcohol problems. He testified that while he was in prison he learned "about drugs and alcohol, to strengthen that foundation of staying clean and sober. * * * I don't commit crimes any more." According to Keller, he has been in counseling to deal with his "drug dependency from back in early `90s."
On cross examination, Keller admitted that he has smoked crack cocaine in the past using a commercial pipe that comes with a screen in it. He also testified that he was familiar with how to use Chore Boy for the same purpose, although he had never done so, and had never seen anyone do so.
 II A. Manifest Weight
The Ohio Supreme Court has noted that "[t]he discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the [judgment]." State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175. In determining whether this is one of those exceptional cases, we review the entire record, consider the credibility of the witnesses, weigh all the evidence, and make all reasonable inferences. Thompkins, 78 Ohio St.3d at 387. To sustain Keller's assignment of error this court must find that, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. Id. The judgment is not a manifest miscarriage of justice if "there is a real conflict in the evidence in the sense that reasonable men might honestly vary in their conclusions as to whether, on the whole record, the judgment rendered below is or is not supported by the evidence[.]" Schwartz v. Wells (1982), 5 Ohio App.3d 1, 5.
To establish that Keller possessed a controlled substance, the state had to prove that the substance confiscated was a controlled substance. R.C. 2925.11(A). Cocaine is a controlled substance. Schedule II(A)(4) of R.C. 3719.41. To establish that Keller possessed drug paraphernalia, it had to prove that the item confiscated was drug paraphernalia. R.C. 2925.14(C)(1) "[A]ny equipment, product, or material of any kind that is used by the offender, intended by the offender for use, or designed for use, in * * * injecting, ingesting, inhaling, or otherwise introducing into the human body, a controlled substance" is drug paraphernalia. R.C. 2925.14(A).
In addition to establishing the identity of the drug and of the paraphernalia, the state had to prove that his possession of each was knowing. R.C. 2925.11(A); R.C. 2925.14(C)(1). The element of knowledge is to be determined from the attendant facts and circumstances particular to each case. State v. Teamer
(1998), 82 Ohio St.3d 490, 492. Absent direct testimony from the defendant as to his state of mind, the trier of fact must review all the facts and circumstances in evidence to determine "whether there existed at the time in the mind of the defendant an awareness of the probability that" his van contained a rock of crack cocaine and a piece of Chore Boy that was intended, or designed to act, as a filter for smoking crack cocaine. See id., quoting 4 Ohio Jury Instructions (1997), Section 409.11(3). See, also, State v. Huffman (1936), 131 Ohio St. 27, paragraph four of the syllabus.
Possession of drugs and drug paraphernalia may be either actual or constructive. State v. Haynes (1971), 25 Ohio St.2d 264,269-270. Mere access to the object, or ownership or occupation of the premises in which it is found does not, alone, create an inference of possession of drugs or drug paraphernalia. R.C. 2925.01(K). The jury may infer possession, however, from the presence of drugs in a useable form within easy reach, and from the presence of equipment designed to ingest them. See State v.Pruitt (1984), 18 Ohio App.3d 50, 58.
There was undisputed testimony that (1) the substance found on the floor in front of the driver's seat of Keller's van was cocaine; (2) there was a blackened piece of Chore Boy in the indentation on the armrest on the driver's door of Keller's van; (3) a small piece of Chore Boy is often used as a filter by individuals who smoke crack cocaine; (4) the piece of cocaine that was confiscated was in crack form; and (5) the rock of crack found was of a normal size an individual would use to get high. What is disputed is whether the piece of Chore Boy was blackened for use as a crack cocaine pipe filter or by Keller's use of it to clean goop from the gasket in his fiancée's car. Keller's knowing possession of both is also disputed.
The two officers who arrested Keller, and confiscated the evidence, testified that in their opinions the Chore Boy was blackened by charring. Officer Givens also testified that it appeared not only to have been cut from a larger Chore Boy, but also to have been "stringed," which he described as pulling out individual strings and mashing them into a pad, which can then be used as a filter. Keller asserted that the black on the Chore Boy was "goop" from cleaning the gasket in his fiancée's car. Both Keller and his fiancée testified that he had, in fact, cleaned the gasket recently.
The jury was permitted to examine the piece of Chore Boy. From their examination of the piece of Chore Boy, the jurors could rationally have decided that it was too small to have been a useful cleaning tool. They could also have decided, based on their own examination, that it had been blackened by charring, rather than with "goop" from cleaning a gasket.
Their conclusion, based on their personal observations, could have been reinforced by their assessment of the credibility of the witnesses who testified. The police officers each attested to having made numerous arrests involving crack cocaine. In addition, Officer Criss was specifically trained in drug identification and arrests. The testimony of each officer was internally consistent, and the testimony of each was consistent with the testimony of the other in all material aspects.
Keller testified during direct examination that he had only been convicted of one offense several years earlier, and that he did not commit crimes any more. On cross examination he admitted to having been convicted of four other offenses, the most recent approximately a year before his arrest in this case. From this, the jury could have determined that Keller was not a truthful individual, and could have rationally rejected his entire testimony.
Crossan's testimony merely indicated that it was Keller's custom to keep materials that still had some use, rather than to throw them out; it did not address the origin of this particular piece of Chore Boy. Her testimony is not inconsistent with a determination that the particular piece of Chore Boy that was confiscated was charred in preparation for using it as a filter to smoke crack cocaine.
The jury, without losing its way, could have chosen to believe its own perception, and the testimony of the police officers, over the assertions of a witness whose own testimony established he was untruthful at times. It was not against the manifest weight of the evidence for the jury to determine that the small piece of Chore Boy was drug paraphernalia.
The device and drug were in the vehicle owned and driven by Keller. The police recovered the piece of Chore Boy from a location at Keller's elbow where he would have touched it, or come close to touching it, each time he opened or closed the door to his van. The rock of crack cocaine was found near his feet and was in a form that could be smoked without further preparation. There was no testimony that anyone other than Keller ever drove the van. Keller testified that he was aware that a piece of Chore Boy could be used as a filter for smoking crack cocaine. When the police signaled him to pull over, Keller did not immediately respond. They had to signal twice with their sirens, which they described as unusual. Keller kept driving for about two blocks before he turned left onto a side street.
From this, a rational juror could have determined beyond a reasonable doubt that Keller was aware of the presence and character of the item at his elbow, and that he had constructive possession of it. The presence of a filtering device to smoke crack cocaine makes the prosecution's assertion that Keller was aware of the cocaine between his feet, which was in crack form, more believable than Keller's assertion that he must have tracked it in on his feet. This imbalance is reinforced by the substantial questions about Keller's credibility, raised by his own inconsistent testimony that was discussed earlier. His failure to pull over immediately, as if he had something to hide, further supports a jury determination that Keller knowingly possessed both the cocaine and the filter.
There was no dispute that the drug found was cocaine. Without losing its way, the jury could have determined, beyond a reasonable doubt, that the Chore Boy was drug paraphernalia. It could further have determined, beyond a reasonable doubt, that Keller knowingly possessed both the paraphernalia and the cocaine. Its determination that Keller was guilty of both offenses was not against the manifest weight of the evidence. Keller's first assignment of error is overruled.
Sufficiency
Keller has asserted that the evidence presented was insufficient to sustain his convictions. Necessarily included in this court's determination that the jury verdict was not against the manifest weight of the evidence, is a determination that the evidence was also sufficient to support the conviction. State v. Roberts (Sept. 17, 1997), Lorain App. No. 96CA006462, unreported, at 2-4. Keller's second assignment of error is overruled.
 III
Keller's first assignment of error is overruled because the jury determination that he knowingly possessed both cocaine and a filter intended for use in smoking it were not against the manifest weight of the evidence. Because a judgment supported by the manifest weight of the evidence is also supported by sufficient evidence, Keller's second assignment of error is overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
 KK
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
WILLIAM R. BAIRD FOR THE COURT CARR, J., WHITMORE, J., concur
[1] Keller's assignments of error are reversed for ease of consideration.
[2] Officer Criss' testimony referred to "a traffic violation," which was clarified by Keller's testimony that he was told he was pulled over because the bulb was burned out.