DECISION AND JUDGMENT ENTRY
This is an appeal from the Lucas County Court of Common Pleas, Domestic Relations Division, which granted appellee Kelly Gorman's petition for a domestic violence civil protection order.
The facts of this case are as follows. Appellee filed a petition for a civil protection order, pursuant to R.C. 3113.31, on February 5, 2001. Appellee alleged that on February 3, 2001, appellant became verbally abusive and stated: "`I'm gonna kick you ass.'" Appellee further claimed that appellant threatened to kill her. An ex parte hearing was held the same day and the trial court granted an ex parte civil protection order. The court ordered, inter alia, that appellant vacate the residence at 16480 Middleton Pike, near Bowling Green, Ohio.
On February 14, 2001, appellant filed a motion to modify the ex parte
civil protection order as to the use of the Middleton Pike property. The motion was not ruled upon.
On March 15, 2001, a full hearing was held before a magistrate. Conflicting testimony was presented. Appellee provided the following recitation of the disputed facts.
Appellee and appellant had been in a romantic relationship for approximately five years, were engaged, and had a one year-old son. In mid-December 2000, appellant indicated that he wanted to end the relationship.
Earlier in December, appellee and appellant signed a lease on a house in Haskins, Ohio, near Bowling Green State University where appellee was a full-time student. The lease was to begin on January 15, 2001. Appellee testified that appellant forced her to remove her name from the lease prior to its commencement and began living there with another woman and her daughter.
On February 3, 2001, the date of the incident, appellee and her son were residing in Sylvania, Lucas County, Ohio, at her parents' house. Appellant came to visit his son but he was sleeping. The parties began arguing in the kitchen and appellant stated to appellee: "I'm gonna kick your ass[.]" The parties proceeded to the garage where appellant threatened to kill her. Appellee stated that appellant was at the house just under an hour and that her father had been listening to their argument from the adjacent stairway.
Appellee further testified that she was very fearful of appellant at that time. Appellee also stated that appellee had pushed and grabbed her previously.
Appellant testified that he and appellee were never engaged; he stayed with appellee because of the birth of their son. Appellant stated that on December 23, 2001, after being unhappy for some time, he ended the relationship.
Appellant testified that he did not force appellee to remove her name from the lease, that he was willing to let her live there but that she could not afford the rent. Appellant stated that he was not romantically involved with Sandra Konczal, the woman who had moved into the Middleton Pike house. Appellant stated that they were friends from high school and that he allowed her and her daughter to move in so they could share the bills.
Discussing February 3, 2001, appellant stated that he arrived at the Gorman's house at 3:35 p.m. His son was sleeping so he and appellee began discussing past bills. Appellant stated that he sensed something "peculiar" so he decided to leave. Appellee followed him out of the house and said "you've threatened to kill me, I'm calling the police." Appellant denied stating that he was going to kick appellee's ass, denied lunging at her, and denied threatening to kill her. Appellant admitted that they had argued a lot in the past, but denied any physical abuse.
Angela Mitro, a friend of appellee, testified that she witnessed bruises on appellee's arm which appellee stated were caused by appellant. Mitro also witnessed an incident where the parties were arguing.
Sandra Konczal testified that on January 15, 2001, she signed the lease for the Middleton Pike property. She also stated that a woman appellant identified as appellee called the house "screaming" on at least two occasions.
Appellee's father, Paul Gorman, testified last. He corroborated appellee's story as to appellant's statement that he was going to kick appellee's ass. He did not hear appellant threaten to kill appellee, that alleged statement took place in the garage while Gorman remained in the house. He did state, however, that appellant was at the house for only fifteen minutes when appellee stated he was there almost an hour.
As to Gorman, appellant, on March 8, 2001, filed a motion notifying the court of his intention to impeach Gorman's credibility based upon two seventeen year-old convictions. At the hearing, the magistrate refused to allow questioning relative to the convictions. Appellant did not object.
On March 16, 2001, the magistrate filed its judgment granting the civil protection order. The magistrate found appellee's and her father's testimony to be credible as to the events of February 3, 2001. Accordingly, the magistrate found that appellee was in danger of or had been a victim of domestic violence.
The judgment, also signed by the judge, ordered that appellant not abuse, harm or threaten appellee. Exclusive possession of the Middleton Pike property was granted to appellant. Visitation matters were also addressed.
Appellant timely filed a notice of appeal and now raises the following three assignments of error:
 "I. THE JUDGMENT OF THE TRIAL COURT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 "II. THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT AWARDED APPELLEE EXCLUSIVE USE OF PREMISES [SIC] IN ITS EX PARTE CIVIL PROTECTION ORDER, AND WHEN IT FAILED TO CONSIDER APPELLANT'S REQUEST FOR AN IMMEDIATE MODIFICATION OF SAID ORDER, AS APPELLEE HAD NO LEGAL INTEREST IN THE PREMISES IN QUESTION.
 "III. THE TRIAL COURT ABUSED ITS DISCRETION TO THE PREJUDICE OF APPELLANT BY FAILING TO ADMIT AND CONSIDER RELEVANT EVIDENCE BEARING UPON THE CREDIBILITY OF WITNESSES, THE CUMULATIVE EFFECT OF WHICH DEPRIVED APPELLANT OF A FAIR TRIAL."
In his first assignment of error, appellant argues that the trial court's judgment is against the manifest weight of the evidence. The statutory requirement in determining whether to issue a civil protection order pursuant to R.C. 3113.31 is:
 "* * * the occurrence of one or more of the following acts against a family or household member:
 "(a) Attempting to cause or recklessly causing bodily injury;
 "(b) Placing another person by the threat of force in fear of imminent serious physical harm * * *" R.C. 3113.31(A)(1)
Further, a household member is defined as:
 "(b) The natural parent of any child of whom the respondent is the other natural parent or is the putative other natural parent." R.C. 3113.31(A)(3)(b).
The household member seeking the civil protection order must prove domestic violence or threat of domestic violence by a preponderance of the evidence. Felton v. Felton (1997), 79 Ohio St.3d 34, paragraph two of the syllabus. Thus, in a case where an appellant argues that the trial court's judgment is against the manifest weight of the evidence, a reviewing court will not reverse the trial court's decision if it is supported by some competent, credible evidence going to the essential elements of the case. C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279, syllabus. Further, on appeal, we presume the validity of the trial court's factual findings because the trial court is in the best position to observe the witnesses and weigh the credibility of the proffered testimony. Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80.
Appellant contends that because appellee's testimony was not consistent with her father's, the court's decision finding appellee's testimony to be credible created a manifest miscarriage of justice. We disagree.
Upon review of the relevant testimony, there is only one instance of an alleged "conflict" between appellee's and her father's testimony. Appellee testified that appellant had been at the house just under an hour; her father testified that appellant was there approximately fifteen minutes. Absent this minor discrepancy, we find that there was competent, credible evidence demonstrating that appellee was in fear of imminent serious harm. Accordingly, appellant's first assignment of error is not well-taken.
In his second assignment of error, appellant contends that the trial court erroneously awarded the Middleton Pike property to appellee following the ex parte hearing. Further, appellant argues that the court erred by failing to consider appellant's request for an immediate modification of the order.
Upon review of appellant's argument, we find it unfortunate that appellant and his roommate were forced to vacate the residence. However, the trial court had the authority to issue such order until a full hearing could be held on the matter. R.C. 3113.31(E)(1)(b). Thereafter, in its March 16, 2001 judgment, the trial court did, in fact, award the residence to appellant. Therefore, we find appellant's second assignment of error to be moot.
Appellant's third and final assignment of error disputes the magistrate's refusal to allow certain evidence relating to the credibility of witnesses. Appellant contends that the cumulative effect of such errors denied him a fair trial.
Appellant first contends that he should have been permitted to introduce a letter written by appellee to the Middleton Pike landlord removing herself from the lease. Appellant contends that such letter was properly admissible as it conflicted with appellee's testimony that appellant removed her name from the lease without her permission.
Appellee counters that testimony regarding the lease was collateral to the issue of whether domestic violence occurred. A collateral matter is one, though relevant, is not material to any issue in the proceeding.Byomin v. Alvis (1959), 169 Ohio St. 395, 396. The admissibility of evidence collateral to the substantive issues and pertinent only to the credibility of a witnesses' testimony is ordinarily a matter within the sound discretion of the trial court. Schwartz v. Wells (1982),5 Ohio App.3d 1.
Appellant contends, and we do not disagree, that the letter was relevant to the issue of possession of the Middleton Pike property. Thus, even assuming that the proffered evidence was not purely a collateral matter, any error by the trial court in excluding the letter was harmless because appellant was, in fact, awarded the property. Further, we cannot say that the trial court abused its discretion in refusing to permit the letter for the purpose of impeaching appellee.
Next, appellant disputes the trial court's refusal to permit appellant the opportunity to question appellee as to an alleged variance in her statement to the court counselor, included in the family file, from her hearing testimony. This variance was the duration of the February 3, 2001 incident.
Initially we question the admissibility of statements appellee made to the court counselor as they are likely confidential. Next, the proffered file was neither part of the record in this case nor had it been properly authenticated. Finally, we question the probative value of the fact that appellee may have stated to the court counselor that the incident was of shorter duration than she testified to during the hearing. Thus, we find that the trial court did not abuse its discretion in disallowing admission of the family file.
Lastly, appellant argues that the trial court erroneously disallowed evidence of appellee's father's prior convictions, proffered to attack his credibility.
We first note that when such evidence was proffered during the hearing, appellant's counsel failed to object to the magistrate's ruling. Even assuming the issue was properly preserved for appeal we find that it lacks merit.
According to appellant, Paul Gorman was convicted in 1984 of one count of conflict of interest and one count of receiving illegal gratuities. Under Evid.R. 609(B), "[e]vidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or * * * the release from the confinement, or the termination of probation, * * *, whichever is the later date * * *." A court has discretion as to whether to admit such prior convictions.State v. Brown (1993), 85 Ohio App.3d 716, 726. Upon review, we cannot say that the trial court abused its discretion when it refused to allow such evidence.
Because we have found that the trial court did not err as to the above evidentiary matters, we further find no cumulative error. Appellant's third assignment of error is not well-taken.
On consideration whereof, we find that substantial justice was done the party complaining and the judgment of the Lucas County Court of Common Pleas, Domestic Relations Division, is affirmed. Costs of this appeal are assessed to appellant.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, J., Melvin L. Resnick, J., and Mark L.Pietrykowski, P.J., CONCUR.