THE STATE OF OHIO, APPELLEE, *v.* JACKSON, APPELLANT.

(No. CA83-12-026—Decided September 17, 1984.)

*John H. Roszmann,* for appellee.

*C. Jay Schwart,* for appellant.

*Per Curiam.* This cause came on to be heard upon an appeal from the Court of Common Pleas of Fayette County.

Appellant, Billy Jackson, an eighteen-year-old man without a prior felony record, was charged with violating R.C. 2913.51 in that he received and/or retained certain stolen property, to wit: photographic equipment worth $300 or more and a .32 caliber semi-automatic pistol. A jury found Jackson guilty of the offense and he was sentenced to a term of one year in the Mansfield Reformatory.

A timely appeal was initiated raising two issues in the following single assignment of error:

"The trial court erred to the prejudice of Defendant-appellant in overruling his motion for jury instructions and for failing to grant Defendant-appellant's motion for a directed verdict of acquittal, because his brief association with the property in question was no [*sic*] sufficient, as a matter of law, to constitute the receipt or retainment of said property."

## I

The essential facts are not in dispute.

Jackson and three friends were driving in the Washington Court House area when one of the occupants of the vehicle, Thomas Umstead, asked the driver to let him out at a particular location and to pick him up some time later. Umstead's intentions at that time were unknown to the occupants of the car. After Umstead was "picked up," he announced that he had committed a burglary and exhibited the fruits of his misdeed for all to examine.

Jackson acknowledged being in actual physical possession of the stolen weapon on three occasions: once upon his initial examination, once when he placed the pistol in his pants for the purposes of having a snapshot taken, and again when he discharged the pistol out of the window of the car while they were driving about the countryside. However, the record before this court demonstrates that at all times Jackson considered the spoils of the burglary to be the property of the burglar and that Jackson claimed no ownership or possessory interest therein. Jackson clearly did not retain or dispose of any of the personal property and, on the three occasions during which he had actual physical possession of the weapon, the possession was for a limited purpose and of momentary duration.

## II

The problem facing this court is to determine what the legislature intended the scope of the offense of receiving stolen property to be. R.C. 2913.51 defines the elements of the crime and provides that:

"(A) No person shall *receive, retain,* or *dispose of* property of another, knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense." (Emphasis added.)

As with all criminal statutes in Ohio, R.C. 2913.51 is to be strictly construed against the state. R.C. 2901.04(A).

## A

Jackson, citing *State* v. *Wolery* (1976), 46 Ohio St. 2d 316, at 329 [75 O.O.2d 366], certiorari denied (1976), 429 U.S. 932, and *State* v. *Hankerson* (1982), 70 Ohio St. 2d 87 [24 O.O.3d 155], certiorari denied (1982), 459 U.S. 870, endeavors to extrapolate from the holdings therein a rule that mere physical possession without dominion and control over stolen property cannot constitute receiving in the criminal sense. Though these cases deal primarily

with the concept of "constructive possession," Jackson's position finds support in Justice Paul W. Brown's opinion in *Wolery, supra,* at 329, wherein he opines:

"The mere fact * * *, that the property was in the possession of the defendant, if such should be the fact, would not alone constitute the receiving of the property."

Jackson argues that he had no authority, power or right to do anything with any of the property but return it to Umstead. If actual physical possession of the .32 caliber weapon is tantamount to receiving stolen property, it is patent from the record that all elements of the offense have been established in this cause beyond a reasonable doubt. However, Jackson argues that, in the absence of a statutory or judicial definition of the word "receive" as used in R.C. 2913.51, it is necessary to apply a definition which is commonly used and understood.

An ordinary definition of the term "receive" is to "take" or "accept" or to "acquire," Webster's Third New International Dictionary (1976) 1894, or to " 'tak[e] into one's hand or one's possession.' " *State* v. *Botta* (1971), 27 Ohio St. 2d 196, 200 [56 O.O.2d 119]; *Maumee* v. *Geiger* (1976), 45 Ohio St. 2d 238, 243 [74 O.O.2d 380]. Black's Law Dictionary (5 Ed. 1979) 1140, defines the term "receive" to mean, "[t]o take into possession and control; accept custody of; collect." To receive stolen property has also been held to mean acquiring control in the sense of physical dominion over or the apparent legal power to dispose of said property. *United States* v. *Walker* (E.D. Tenn. 1973), 384 F. Supp. 262, 263. This definition envisages possession or control as an essential element. *Id.*

This court finds that the definition in *Walker* best describes the element of dominion and control we believe the legislature required in defining the crime of receiving stolen property. It does not take a great deal of imagination to develop circumstances wherein an innocent person could find himself facing criminal charges for merely possessing momentarily an item he had reason to believe was stolen, under the state's analysis of R.C. 2913.51. However, proof of dominion or control is proof that the purpose of the receipt was wrongful, not innocent. For example, receiving the property for the purpose of returning it to its owner or to detect the thief should not be a criminal act. Nor should mere naked possession of recently stolen property be sufficient to satisfy R.C. 2913.51.

Obviously, one who is in actual physical possession of tangible personal property is in an excellent position to exercise dominion or control over the property should he choose to do so. If the property is a loaded .32 caliber revolver, its "mere" possession indicates a high degree of control as well as the ability to virtually guarantee the continuity of that control should the possessor desire to do so.

While Jackson unquestionably possessed the .32 caliber revolver momentarily and, as argued by the state, exercised "a restraining or directing influence" over the gun, Jackson argues that something more is required before he can be held criminally responsible for receiving this stolen property.

Jackson's condonation of Umstead's criminal act, his failure to disassociate himself from the act, the property and his peers upon becoming aware of Umstead's criminal act, and his succumbing to peer pressure to handle, examine, and discharge the stolen gun does little to enhance his stature. However, as discussed above, in the absence of evidence establishing the necessary *mens rea* required for the offense charged, Jackson's acts would not constitute a violation of R.C. 2913.51.

The lack of a criminal intent is ob-

viously a matter of defense in such a prosecution, and not an element necessary to be averred or specifically proven by the state. On the basis of the record before us, we find that there was sufficient evidence presented by the state from which Jackson's state of mind could have been circumstantially proved, and we must conclude that Jackson's sole assignment of error, as it relates to the trial court's overruling of his motion for acquittal pursuant to Crim. R. 29(A), is not well-taken on this basis as reasonable minds could have reached different conclusions as to whether each element of the crime was proved beyond a reasonable doubt. *State v. Bridgeman* (1978), 55 Ohio St. 2d 261 [9 O.O.3d 401].

A different result is obtained, however, in considering the assignment of error as it relates to the request for a special instruction to the jury and the court's charge to the jury.

We cannot find that Jackson's proposed special instruction was a proper, clarifying instruction as it essentially defined "constructive possession." There was simply no question that Jackson actually handled the property involved and his instruction was inapposite. However, we also cannot conclude that the trial court's presentation of the standard charge found in 4 Ohio Jury Instructions (1984) 245, Section 513.51, was sufficient in the cause *sub judice*. This charge sets forth the elements of the offense and was appropriately accompanied by definitions of the terms "property," "reasonable cause to believe," and "theft." Effectively, the trial court allowed the jury to believe that mere physical possession of the property was sufficient to constitute a receiving of such property in the criminal sense. A necessity for a further definition of "receive and/or retain" is demonstrated in the jury's request for additional information. The jury wrote,

"We the jury would like a definition of receiving stolen property." To this inquiry, the trial court responded by rereading the original charge herein. After being so reinstructed, the jury continued their deliberations and returned with their guilty verdict.

While Jackson did not object to the charge as given, his request for a special instruction, which was denied, is tantamount to an objection to the charge given. Additionally, as this court finds that the instruction given by the trial court to the jury was incorrect or inadequate given the somewhat unique circumstances of this cause, no objection would be necessary inasmuch as such charge would be plain error.

While Ohio Jury Instructions provides a useful tool to both bench and bar, it is nevertheless essential that the trial court, after full consideration of the testimony and evidence presented to the jury, properly and adequately instruct the jury so that they may fairly and intelligently understand the law and apply the law to the facts presented. This court is of the opinion that the charge given below, in view of the testimony presented, did not adequately instruct the jury and was prejudicial to the interest of Jackson. Accordingly, we must sustain Jackson's sole assignment of error on this basis.

It is the order of this court that the judgment or final order herein appealed from be, and the same hereby is, reversed and the cause remanded for further proceedings not inconsistent with this decision.

*Judgment reversed and cause remanded.*

KOEHLER and JONES, JJ., concur.

HENDRICKSON, P.J., dissenting. I dissent.