DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Bronson Castle was convicted, following a jury trial in the Summit County Court of Common Pleas, of receiving stolen property in violation of R.C. 2913.51(A), and of possession of criminal tools in violation of R.C. 2923.24. He has appealed his conviction.
Castle has asserted that the trial court erred when it (1) admitted evidence of previous incidents, which fell outside Evid.R. 404(B), in which he was "found to be in possession" of stolen property and, in one instance, of a criminal tool; (2) failed to adopt its requested special instructions with respect to "receive," "possession," and "criminal purpose of using, possessing criminal tools;" and (3) convicted him on these charges against the manifest weight of the evidence. We overrule all three assignments of error, and affirm the judgment of the trial court.
 I
The undisputed testimony in the case established that police stopped Michael Butterworth and Castle while Butterworth was driving, and Castle was a passenger in, Sheila Byers' 1986 Buick Skylark. They did not have her permission to have the vehicle, nor did they have the ignition key. When the vehicle was recovered the inside driver's door panel was missing and a hole was gouged in the steering column on the side nearest the driver's door.
Butterworth, who was also convicted of receiving stolen property as a result of this incident, testified against Castle. Butterworth testified that he went to visit Mike Burns, a mutual acquaintance, between one and one-thirty in the afternoon. He had paged Burns a little earlier to make sure that Burns was home. Although his direct testimony was hazy as to the order of arrival at Burns' house, on cross examination he clarified that Castle arrived after he did and that he initially saw the stolen Buick at about 2:00 p.m. when the three left to get beer. The three drove around for the better part of two hours. Shortly before four they returned to Burns' house and drank a few beers while standing outside on the front steps talking. At around 4:00 p.m. the three drove to a house on Summit Street ("Summit house"), stopping along the way to buy more alcohol. On this trip, Butterworth and Burns drove in Butterworth's car and Castle followed in the Buick. They stayed at the Summit House until eight in the evening. Somewhere around 8:00 p.m., Butterworth and Castle left in the Buick, with Castle driving, to give a friend of Castle's a ride to work. Butterworth left his car parked near the Summit house. After picking up and dropping the friend off, Butterworth joked about the Buick not driving well and, at Butterworth's request, the two traded seats at a red light. Shortly after that the police pulled the car over, and arrested both Butterworth and Castle. Butterworth also testified that, although his "curiosity was peaked [sic]," he had no specific knowledge that the car was stolen until he and Castle were in the holding cell together and Castle told him that "[i]t's been hot for two days."
With regard to the same series of events, Castle testified that he took the Metro to the Summit house, and arrived there around noon. He spent the afternoon with Burns talking, playing cards, and watching movies. While at the Summit house, Castle received a page from his manager at Rally's, inquiring whether he was coming to work. The manager, whom Castle is dating, verified that she did call Castle shortly after his shift was to have begun, at either nine or ten o'clock in the evening. According to Castle, a short time after that Butterworth paged Burns, and when Burns returned the call he asked if Butterworth could give Castle a ride to work. Castle testified that he saw Butterworth for the first time, that day, when he arrived driving the Buick at about seven thirty in the evening. When Butterworth arrived, Castle "[b]asically * * * grabbed [his] stuff and went down to put [his] stuff in the car."
Castle testified that he did not know the car was stolen, and denies having told Butterworth that the car had been "hot for two days." According to Castle, Butterworth never turned the car off in his presence, nor did he see the damaged steering column. When a screwdriver was rolling around on the dashboard he grabbed it and asked Butterworth what he should do with it. In response to Butterworth's request that he hold on to it, Castle put the screwdriver in the pocket of his sweat suit. According to Castle, he never drove the Buick. The friend they drove to work testified that Butterworth was driving the car at the time they picked him up.
Castle testified that when they were arrested the police officers handcuffed him, took the screwdriver off of him, and put him in the backseat of the cruiser. According to Castle, he did not see the screwdriver after it was taken from him immediately at the time of his arrest.
Officer Keith Lavery, the arresting officer testified that Castle was "not complying," and that once he was out of the car, Castle resisted being handcuffed and continued to yell at the officer. According to Lavery, when he did a pat down for weapons he felt a suspicious object which, on closer inspection, turned out to be the screwdriver. He did not initially take the screwdriver from Castle, leaving it in Castle's pocket for later inventory at the station because Castle was already handcuffed and could not use the screwdriver as a weapon. When they got to the station Castle no longer had the screwdriver in his pocket. Lavery testified that he found the screwdriver "underneath the driver's seat kicked underneath the bottom of the cage. Lavery also testified that once he retrieved the screwdriver from underneath the seat Castle muttered to himself, "I'm so stupid." Castle denied making such a statement.
Butterworth testified that while he was in jail, he spoke with his father and gave him directions to his car so that it could be picked up. His father testified that he received a call from Butterworth. He drove to the location on Summit Street where his son told him that the car could be found, and that he retrieved it while Butterworth was still incarcerated following his arrest.
At the trial testimony was introduced, over Castle's objections, about Castle's prior experience with stolen vehicles. When asked if "a peeled column on an automobile would be a clear indicator that the car had been stolen," Castle replied "I wouldn't know." A few questions later he admitted that he has "heard of it." Castle testified that in April 1994, he was found to be in possession of a stolen 1986 Buick, and in May 1994 he was found to be in possession of another stolen 1986 Buick, and in May 1994 he was found to be in possession of a stolen 1986 Olds. In the May 1994 stolen Buick incident, he was also found to be in possession of a screwdriver.
 II
Prior Bad Acts Evidence
 "The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." State v. Sage (1987), 31 Ohio St.3d 173, paragraph two of the syllabus. The judgment of the trial court will be reversed only if the reviewing court finds that the trial court clearly abused its discretion by admitting the evidence, and that the admission materially prejudiced the complaining party. State v. Hymore (1967), 9 Ohio St.2d 122, 128, certiorari denied (1968), 390 U.S. 1024, 20 L.Ed.2d 281. To find an abuse of discretion, the reviewing court must find that the trial court's actions were "unreasonable, arbitrary, or unconscionable." State v. Adams (1980), 62 Ohio St.2d 151, 157.
Evidence that the defendant has committed other bad acts is not admissible to prove that the defendant is a bad person, and that the current acts of which he stands accused are consistent with his general character. Evid.R. 404(B). Evidence of those same unrelated acts may, however, be admitted to establish the absence of mistake or accident. State v. Curry (1975), 43 Ohio St.2d 66,69.
Castle voluntarily testified in this case. On the stand he denied any knowledge that the car in which he was a passenger was stolen. Further, he testified that he would have had no way of knowing that the car was stolen. He also testified that he was holding the screwdriver for Butterworth solely to keep it from rolling around the dashboard. In other words, he mistakenly believed that the 1986 Buick was in the rightful possession of Butterworth, and that there was no particular reason for the screwdriver to be in the car. Castle has challenged the admission of evidence that he was twice found to be in the possession of a stolen 1986 Buick and a third time in possession of a stolen 1986 Olds. He has also challenged the admission of the evidence that in one of those incidents he was also found to be in possession of a screwdriver that was classified as a criminal tool.
The evidence of Castle's prior possession of stolen vehicles and of criminal tools was not admissible as character evidence. It was, however, admissible for the purpose of establishing that his previous experience gave him ample reason to know that the vehicle in which he was riding was stolen and that the screwdriver was not just accidentally in the car. The decision of the trial court to admit the evidence of Castle's prior bad acts was not an abuse of discretion. Castle's first assignment of error is overruled.
 Jury Instruction A defendant who does not object to a jury instruction he believes to be erroneous generally waives his right to have the issue reviewed on appeal, absent an error that would constitute plain error. Crim R. 30(A); State v. Underwood
(1983), 3 Ohio St.3d 12, syllabus. The Ohio Supreme Court has carved out a narrow exception to the general rule. When the "record affirmatively shows that a trial court has been fully apprised of the correct law governing a material issue in dispute" and does not instruct the jury in accordance with that law, the defendant does not waive his right to raise the issue on appeal by his failure to formally object to the instructions given. State v. Wolons (1989), 44 Ohio St.3d 64, paragraph one of the syllabus.
The trial court is required to provide the jury with all instructions that are relevant and necessary in order for it to weigh the evidence and discharge its duty as fact finder. Statev. Comen (1990), 50 Ohio St.3d 206, paragraph two of the syllabus. In criminal cases "if the requested instructions contain a correct, pertinent statement of the law and are appropriate to the facts they must be included, at least in substance, in the court's charge to the jury." State v. Nelson (1973), 36 Ohio St.2d 79, paragraph one of syllabus, overruled on other grounds. In determining whether the requested special instructions should be given, the court must bear in mind the guidance of the Supreme Court of Ohio, which discourages supplementing the statutory definitions, State v. Williams (1988), 38 Ohio St.3d 346, 356, fn. 14, certiorari denied (1989), 489 U.S. 1040, 103 L.Ed.2d 238, and encourages using wording that is based upon the wording of the applicable statute, see State v. Lawrence (1989), 44 Ohio St.3d 24,27.
Here, immediately prior to closing arguments Castle orally requested three special instructions. The first two instructions were for definitions of words contained in the statutes under which he was charged, and the third was for an instruction on the interrelation between a statutory inference and the burden of proof. For each of these requested instructions, Castle provided the court with a copy of a valid, although not controlling, Ohio case and requested that an excerpt be included in the instructions. Although the cases and requested instructions are not identifiable from the transcript, it is clear from the transcript that the court was able to identify the relevant case and the portion requested as an instruction.
It would have been better practice to have made a written motion, including full case citations, and to have objected when the trial court gave the instructions without including the requested special instructions. Nonetheless, the information in the transcript is sufficient to demonstrate that it fits within the Wolons exception. The requested instructions pertained to material disputed issues, were supported by cases intended to inform the court of the correct governing law, and were not included in the jury instructions.
Castle requested that "syllabus one[1] of the McShan case which describes a definition what [sic] is needed in possession of — — being in the passenger side and what would constitute either a dominion of or lack of dominion over it" be given as a definition for possession with regard to the charge of possession of criminal tools.[2] The instruction requested is not a statement of the law. Rather it is a factual determination based upon the particular facts in the case that, "It is undisputed that [the passenger] was seated in the front passenger side of the automobile and that the driver of the vehicle had title to the car. Nothing in the record demonstrates that [the passenger] had the ability to exercise dominion or control over the auto." Statev. McShan (1991), 77 Ohio App.3d 781, 783. In McShan, the issue was constructive possession of an automobile, as a criminal tool. Here, the disputed issue involves actual possession of a screwdriver, as a criminal tool. Even if the legal premises upon which the factual conclusion in McShan is based are correct, and are distilled into a rule of law, an instruction based on that law would have been inappropriate here where there is no question that Castle actually, not constructively, possessed the screwdriver. It was not error for the court to refuse to give the requested instruction on "possession."
Castle also requested that the jury be instructed as to the ordinary definition for the word "receive" that was utilized inState v. Jackson (1984), 20 Ohio App.3d 240. The statute does not define the word "receive" and no definition was given to the jury. The definition Castle requested is that receive is to "acquir[e] control in the sense of physical dominion over or the apparent legal power to dispose of said property." Id. at 242.Jackson cited a case from the Eastern District of Tennessee as the source of the definition, and since its use in Jackson it has generally been accepted as a correct definition. See, e.g., Statev. Phelps (July 30, 1986), Summit App. No. 12483, unreported, at 3.
The question before this court, however, is not only whether the definition is correct but also whether it should have given in this particular case. The general rule in criminal cases is that a requested instruction that is legally correct should be given. It is qualified by the general guidance of the Supreme Court that juries are to be given all instructions that are relevant and necessary to discharge their duties, and the specific guidance that instructions be based on the relevant statutory language.Comen, 50 Ohio St.3d at paragraph two of the syllabus.
The Jackson court described the instruction given by the trial court to the jury as "incorrect or inadequate given thesomewhat unique circumstances of this cause[.]" (Emphasis added.)Jackson, 20 Ohio App.3d at 243. The Jackson court's discussion on both the evidence in the case and the propriety of the jury instruction given focused on the possibility that an individual might be convicted of receiving stolen property based on "merely possessing momentarily an item he had reason to believe was stolen," without requiring the state to prove wrongful intent with respect to the receipt. Id. at 242. As a general principle, there is a distinction that can be drawn between "receive" and the other two means of receiving stolen property: retain and dispose. Both retain and dispose inherently imply deliberate action with respect to the property; receive does not. To the extent that receive may be interpreted as merely a passive state rather than as a deliberate action, in a case factually similar to the scenario proposed in Jackson, it might be relevant and necessary for the court to specifically define receive. This is particularly true if, as in the Jackson case, the jury asks for additional clarification of the meaning of the phrase "receiving stolen property."
Those are not the circumstances in this case. Here, by his own admission, Castle's occupancy of the car was more than fleeting. If, as the jury found, Castle did receive stolen property, his receipt of that property was of long enough duration that it does not fit in the category that the Jackson court found to be troublesome, mere momentary possession. In addition, Castle's jury did not request clarification of the definition it had been given.
The instructions actually given were based upon the statutory language, and the additional requested definition was not relevant and necessary under the Jackson reasoning, applied to the facts in this case.[3] It was not an error for the trial court to refuse to specifically define "receive" for the jury.
Finally, Castle requested the jury be instructed that, if the state cannot establish that the facts in this case are "within one of the three circumstances which constitute prima facie evidence of criminal purpose under the statute prohibiting possession of criminal tools, the state must prove criminal purpose beyond a reasonable doubt, without benefit of the statutory inference."[4]
The trial judge instructed the jury on the elements of possession of criminal tools, including the permissibility of establishing criminal purpose by statutory inference. After instructing the jury on prima facie evidence, the judge continued:
 Throughout the trial you have repeatedly been instructed that it is the State's burden to prove the Defendant guilty beyond a reasonable doubt.
* * *
 In making your decision you must consider all of the evidence that has been presented to you.
* * *
Evidence may be direct or circumstantial or both.
* * *
Evidence may also be used to prove a fact by an inference.
This type of evidence is called circumstantial evidence.
* * *
 To infer, or to make an inference, is to reach a reasonable conclusion of fact, which you may, but are not required to make, from other facts which you find have been established by direct evidence. Whether an inference is made rests entirely with you.
(Emphasis added.)
The substance of the requested instruction was given to the jury in a way that is more legally accurate. The requested instruction is open to the misunderstanding that the establishment of facts supporting a statutory inference relieves the state of its burden to prove the inferred fact beyond a reasonable doubt. The instructions given, while permitting statutory inference, are not open to the legally incorrect interpretation that utilizing an inference changes the burden of proof. Pursuant to the instructions given, inserting the facts of this case, the state was required to prove criminal purpose beyond a reasonable doubt, whether by direct or circumstantial evidence. One means by which it was permitted to establish criminal purpose beyond a reasonable doubt, was to offer evidence of common usage of the screwdriver as a criminal tool, and of the circumstances in which it was found. The jury was permitted, but not required, to infer from that evidence the fact of criminal purpose. It was not error for the trial court to refuse to instruct the jury in the manner requested.
We overrule Castle's second assignment of error.
 C. Manifest Weight of the Evidence
The Ohio Supreme Court has noted that "[t]he discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the [judgment]." State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175. In determining whether this is one of those exceptional cases, we review the entire record, consider the credibility of the witnesses, weigh all the evidence, and make all reasonable inferences. Angus v. Ventura (January 27, 1999), Medina App. No. 2740-M, unreported, at 5. To sustain Castle's assignment of error this court must find that, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. Id. The judgment is not a manifest miscarriage of justice if "there is a real conflict in the evidence in the sense that reasonable men might honestly vary in their conclusions as to whether, on the whole record, the judgment rendered below is or is not supported by the evidence[.]"Schwartz v. Wells (1982), 5 Ohio App.3d 1, 5.
1. Receiving Stolen Property
In order to convict Castle of receiving stolen property, the state was required to establish that Castle, "receive[d], retain[ed], or dispose[d] of property of another knowing or having reasonable cause to believe that the property has been obtained through the commission of a theft offense." R.C. 2913.51(A). Castle has challenged the proof that he possessed the necessarymens rea to be convicted of the offense, asserting that "it would be impossible for [him] to know or have reasonable cause to know that Butterworth was not in legal possession of the vehicle."
Castle and Butterworth tell irreconcilable stories of the events on June 8, 1998, with bits and pieces of each story supported by other witnesses. The jury was faced with two viable descriptions of the events on June 8, and had to choose which, if either, it believed.
According to Butterworth, he arrived at Burns' house slightly before Castle did. The 1986 Buick appeared early afternoon on Fifteenth Street, and was parked at the time he first saw it. When the party moved to the Summit house, Butterworth and Castle drove separately, with Castle following Butterworth in the stolen car. Later in the evening, Butterworth left his car parked in front of the Summit house when they went out for a drive in the stolen vehicle. Castle started driving, and while he was driving around, they picked up and dropped off a friend of Castle's who needed a ride to work. Later, when the car wasn't driving well, Castle let Butterworth try his hand at driving to see if he could do any better. He was unaware the car was stolen until they were in the holding cell and Castle told him the car was "hot." His version is supported, in part, by his father's statement that while Butterworth was incarcerated, he had to retrieve Butterworth's car from where he left it on Summit Street when he and Castle took off in what was ostensibly Castle's Buick.
According to Castle, he took the Metro to the Summit house and arrived there around noon. The first time he saw the Buick was when Butterworth drove up with it in the evening. Butterworth never turned the car off, and Castle never drove the vehicle. Because of this, Castle didn't see the hole in the driver's side of the steering column and wasn't aware that there was no ignition key. Castle's version is supported, in part, by the friend they picked up who testified that Butterworth was driving at the time.
Butterworth's version is inconsistent with a lack of knowledge or reasonable belief on Castle's part. Castle had been found to be in possession of a stolen vehicle three times in the past. Two of them were 1986 Buicks and the third was a 1986 Olds. In one of the incidents he was found in possession of a screwdriver which testimony established was a common tool used to start stolen vehicles.
If the jury determined that Castle was driving at any time it is inconceivable that he did not have at least "reasonable cause to believe" that the 1986 Buick was stolen, particularly given his prior experiences of having been found in the possession of two stolen 1986 Buicks and of a stolen 1986 Olds. Even if it found Castle was not driving, the jury could easily have believed that the missing door panel, the screwdriver rolling around the dashboard, and the lack of an ignition key created reasonable cause for him to believe that Butterworth was not lawfully in possession of the vehicle, particularly when combined with his own remarkably similar experiences in the past.
There is a real conflict in the testimony about the events of the day, with each version believable on its face. Because of this, the choice to believe Butterworth's version, or to believe some combination of the two, is not against the manifest weight of the evidence. Even if the jury believed most of Castle's version, including that he never drove the car, they may have found it hard to believe that he had no idea the car was stolen. This is particularly true in light of his three prior experiences, which should have indelibly imprinted in his mind the suspicion that a 1986 Buick with no ignition key, no driver's door panel, and a screwdriver rolling around the dashboard might be stolen.
Possessing Criminal Tools
 To establish that Castle was in the possession of a criminal tool, the state was required to establish that he possessed or had under his control an item, with the purpose of using it criminally. R.C. 2923.24(A). Evidence that this item is "commonly used for criminal purposes, under circumstances indicating the item is intended for criminal use," is prima facie evidence of criminal purpose. R.C. 2923.24(B)(3). If such evidence is presented and believed, it is sufficient to establish guilt unless it is rebutted or proven to the contrary. State v. Cummings (1971), 25 Ohio St.2d 219, paragraph one of the syllabus.
Officer Thomas Shannon testified that the most popular way of starting a stolen car is to "crack the [steering] column" and pull the lip of a rod inside the column. He also testified that the screwdrivers are used for cracking steering columns and that they are the most popular tools for pulling the rod. The screwdriver was found in Castle's possession when he was arrested as a result of occupying a stolen vehicle.
The testimony established that screwdrivers are commonly used for criminal purposes. Specifically, they are commonly used to start stolen vehicles. It also established that the circumstances in this case indicated the screwdriver was intended for criminal use. Specifically it established that the particular vehicle in which it was found was stolen, had a cracked steering column, and was running without an ignition key. It was not against the manifest weight of the evidence for the jury to accept that this prima facie evidence of guilt, particularly when combined with Butterworth's version of the events, established beyond a reasonable doubt that Castle had a criminal purpose in possessing the screwdriver.
Because neither the determination that Castle had received stolen property, nor the determination that he was in possession of criminal tools, is against the manifest weight of the evidence Castle's third assignment of error is overruled.
 III
Castle's first assignment of error is overruled because the evidence of his prior bad acts was admissible to establish his knowledge that the vehicle in which he was riding was stolen, and to establish that he was aware of the related criminal uses to which a screwdriver might be put. Because the generally correct requested instructions were not relevant and necessary to the jury's disposition of its duties, inappropriately supplemented statutory definitions, or were included in substance in the instructions given, Castle's second assignment of error is overruled. Castle's third assignment of error is overruled because the decision of the jury that he committed the offenses of which he was convicted was not against the manifest weight of the evidence. The judgment of the trial court is affirmed.
Judgment affirmed.
 KK
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E).
Costs taxed to Appellant.
Exceptions.
WILLIAM R. BAIRD
FOR THE COURT SLABY, J.
CARR, J.
CONCUR
[1] Castle is apparently referring to the first headnote, added by West Publishing company when it prints the case in the Ohio Official Reports, because it is the first headnote that contains the quoted language.
[2] It is likely that Castle wanted the definition of possession to be given in relation to the offense of receiving stolen property, specifically the car in which he was a passenger. The word "possession" is not contained in the statute defining receiving stolen property, the property in this case being the automobile. It is part of the offense of possession of criminal tools, the tool in this case being the screwdriver. Although he specifically requested the definition for the word possession, when questioned about the apparent discrepancy between the case and the offense with which Castle was charged, the response was, "Well, this one would be for the automobile." Because neither the transcript nor his brief clearly articulates which offense the definition should have been given for, this court has analyzed the request relative to the statute for which it might properly have been requested.
[3] This court has used the definition provided in Jackson in analyzing previous cases. We reference the analysis in Jackson
here because it is the only support provided by Castle for inclusion of the definition in a jury instruction. In doing so, we do not necessarily adopt the analysis as correct.
[4] The language of the requested instruction is taken from the appellate brief, because it is substantially the same as, and more concisely stated than, what is contained in the trial transcript.