JOURNAL ENTRY and OPINION
Appellant was convicted of one count of receiving stolen property, fifteen counts of unauthorized access to a computer system, and fifteen counts of tampering with records following a jury trial in the common pleas court. Appellant now complains:
 I. THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE APPELLANT'S CONVICTIONS WITH RESPECT TO COUNTS TWO THROUGH THIRTY-ONE AND THE CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 II. COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO THE ADMISSION OF IRRELEVANT PREJUDICIAL TESTIMONY.
 III. THE PROSECUTOR'S STATEMENTS DURING CLOSING ARGUMENTS IMPROPERLY COMMENTED ON THE APPELLANT'S FAILURE TO TESTIFY IN VIOLATION OF HIS FIFTH AMENDMENT RIGHTS.
 IV. THE COURT ERRED IN FAILING TO GIVE AN ACCOMPLICE WITNESS INSTRUCTION AS REQUIRED BY R.C. 2923.02 AND COUNSEL WAS INEFFECTIVE FOR FAILING TO REQUEST SUCH AN INSTRUCTION.
 V. THE FINDING THAT THE APPELLANT WAS RESPONSIBLE FOR RECEIVING IN EXCESS OF $100,000 WAS UNSUPPORTED BY THE EVIDENCE.
We find the evidence was insufficient to support appellant's convictions for unauthorized access to a computer system and tampering with records. Accordingly, we reverse appellant's conviction on counts two through thirty-one. We overrule appellant's remaining assignments of error and affirm appellant's conviction on count one for receiving stolen property.
 I. FACTUAL AND PROCEDURAL HISTORY A. Procedural History
Appellant was charged in a thirty-one count indictment filed November 12, 1998. Count one charged appellant with receiving stolen property, specifically money, with a value of $100,000 or more. Counts two through sixteen charged him with unauthorized access to a computer system on November 11 and 18 and December 2, 9, 15, 23, and 30, 1997, and on January 19 and 30, February 9, 18, and 26, March 13, and April 3 and 17, 1998. Counts seventeen through thirty-one charged appellant with tampering with records on those same dates. The value of the property involved in each of these charges was alleged to be $5000 or more but less than $100,000.00.
The case proceeded to trial before a jury on June 29, 1999. At the conclusion of the state's case, the defendant moved for acquittal on all charges under Crim.R. 29, but the court overruled that motion. The defendant presented no evidence. The jury returned a verdict of guilty as to each count and further found the value of the property involved in the receiving stolen property charge was $100,000 or more and the value of the property involved in each of the tampering with records charges $5000 or more but less than $100,000.00. On August 3, 1999, the court sentenced appellant to two years' imprisonment on count one, eleven months' imprisonment on each of counts two through sixteen, and two years' imprisonment on each of counts seventeen through thirty-one. The sentences on counts one, two, three, and seventeen were to run consecutive to one another; the sentences on the remaining charges were to run concurrently with each other and with all other counts.
 B. Trial Testimony
Three witnesses testified at trial: Karen Coffey, the principal offender; Adam Wallace, the president of Book Stacks Unlimited, the business from which the funds at issue were taken; and police detective Angelo Ortiz.
Wallace testified that Book Stacks employed Ms. Coffey as an assistant to its accountant in December 1994. She became their bookkeeper when the accountant left some time in 1995. She had computer access to sales records as part of her employment but was not authorized to access a separate computer that was used to process credit card transactions. Wallace saw appellant visiting Ms. Coffey in Book Stack's offices and observed him playing games on their computers.
In April 1998, Wallace was contacted by Book Stacks' credit card processing center about several credits to accounts for which there were no matching charges. The credit card company confirmed that Coffey's and appellant's names were on the accounts credited. Coffey later admitted she had credited her own account and was dismissed from her employment. The total amount of credits to her account was around $150,000.00.
Karen Coffey testified that she had entered into a plea agreement in exchange for her testimony against appellant. She had been sentenced to one hundred twenty days' imprisonment and five years' probation.
Coffey testified that she had a MasterCard account in her own name. She made appellant an authorized user of that account. She also had a bank debit card and a Visa check card; appellant usually had possession of the Visa card, while she had the bank debit card. Appellant was not a signatory on the bank account, but he could use the card in his possession to remove money from the account at an automated teller machine (ATM).
Coffey testified that she credited her MasterCard and Visa accounts for the following amounts through a computer at work:
 September 1997 $ 7,050.00 October 1997 $25,550.00 November 1997 $15,798.76 December 1997 $30,607.68 January 1998 $13,771.54 February 1998 $25,511.91 March 1998 $ 8,476.94 April 1998 $ 8,875.38
Coffey testified that in September 1997, she told appellant the funds were a bonus from work. Some time in October 1997, she told him she was putting credits on her cards. At the time, she was upset that appellant had brought another woman into the house so that he could make more money. Coffey told him that he did not need all these other girls. I can bring you the money. Appellant asked her if what she was doing was illegal, and she said it was. He asked her if she could get in trouble for it, and she said yes. He did not ask her to stop. Basically he just wanted to know, you know, if I could get caught and how much I could get.
Coffey said appellant would withdraw funds from an ATM with the Visa check card; he knew funds in the account were stolen because she would call him for the card numbers so she could credit them.
Coffey testified that she bought many gifts for appellant and paid bills for him. She identified checks she had signed for items she purchased and paid for with the stolen funds, including carpeting, doors and windows installed in the home she shared with appellant, a motorcycle and a magazine subscription for appellant, telephone bills, a water bill, a MasterCard bill, and traffic tickets appellant had incurred. She also indicated that she and appellant took vacations together and spent money on those trips out of the bank account that had been credited with stolen funds. She claimed appellant took one trip alone, spending money out of this account. Finally, she testified that some $22,452 was deposited with Lentine's Music for recording equipment for appellant. It is not clear on the record who deposited those funds, but appellant's home was listed as the shipping address.
Detective Ortiz testified about his investigation of this matter and the items he recovered from appellant's house pursuant to a search warrant.
 II. LAW AND ANALYSIS A. Sufficiency and Weight of the Evidence
The first and fifth assignments of error both concern the sufficiency of the evidence to support the verdicts on all thirty-one charges, so we will address them together.
The first assignment of error actually raises two distinct legal issues: the sufficiency and the weight of the evidence supporting appellant's convictions for unauthorized access to a computer system; and tampering with records. A court reviewing the sufficiency of the evidence must view all the evidence in the light most favorable to the state and determine whether any reasonable trier of fact could find the essential elements of the crime had been proven beyond a reasonable doubt. State v. Jenks (1991),61 Ohio St.3d 259. Sufficiency is a test of adequacy; that is, whether the evidence is legally sufficient to sustain the verdict as a matter of law. State v. Thompkins (1997), 78 Ohio St.3d 380,386. In evaluating the manifest weight of the evidence, by contrast, this court must review the entire record, weigh the testimony and other evidence, and determine whether the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Martin (1983), 20 Ohio App.3d 172, 175 (cited with approval in State v. Thompkins [1997], 78 Ohio St.3d 380,387). With this distinction firmly in mind, we turn to an analysis of the sufficiency of the evidence of unauthorized access to a computer system and tampering with records.
 1. Unauthorized Access/Record Tampering. (Counts 2-31)
The crime of unauthorized access to a computer system is defined as follows:
 (B) No person shall knowingly gain access to, attempt to gain access to, or cause access to be gained to any computer, computer system, computer network, telecommunications device, telecommunications service, or information service without the consent of, or beyond the scope of the express or implied consent of, the owner * * *.
R.C. 2913.04. Tampering with records is defined by R.C. 2913.42:
 (A) No person, knowing the person has no privilege to do so, and with purpose to defraud or knowing that the person is facilitating a fraud, shall do any of the following:
 (1) Falsify, destroy, remove, conceal, alter, deface, or mutilate any writing, computer software, data, or record;
* * *
There was no evidence appellant, himself, performed the acts described in these statutes. Appellant moved for acquittal on this basis. The court overruled appellant's motion on the ground that appellant could be found to have aided or abetted Coffey's crimes.
Complicity is statutorily defined as follows:
 (A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
 (1) Solicit or procure another to commit the offense;
 (2) Aid or abet another in committing the offense;
 (3) Conspire with another to commit the offense in violation of section 2923.01;
 (4) Cause an innocent or irresponsible person to commit the offense.
R.C. 2923.03.
There is no evidence appellant solicited Coffey to commit the offenses at issue. Coffey began committing this series of crimes before she even told appellant what she was doing. Appellant may have been aware of when Coffey was crediting funds to her accounts, but there is no evidence appellant ever asked her to do so; therefore, R.C. 2923.03(A)(1) is clearly inapplicable.
There is also no evidence appellant conspired with Coffey to commit the offenses in violation of R.C. 2923.01. Under Ohio law, a conspiracy is punishable only if it concerns certain listed offenses; neither unauthorized use of a computer nor tampering with records can be the subject of a conspiracy under R.C. 2923.01. Therefore, appellant cannot be guilty of complicity because he conspired with Coffey.
Nor is there any evidence appellant caused Coffey to commit the offenses or that she was innocent or irresponsible. R.C.2923.03(A)(4) likewise does not apply to the facts of this case.
The only potential ground for finding appellant guilty of complicity is if appellant aided or abetted Coffey. The phrase aid or abet is not defined by statute. Ohio courts have defined aid to mean assist and abet to mean incite or encourage. See Horstman v. Farris (1999), 132 Ohio App.3d 514, 527; State v.Stepp (1997), 117 Ohio App.3d 561, 568.
There is no evidence appellant assisted Coffey in committing these crimes. There is no evidence he either encouraged or discouraged Coffey. Appellant benefitted from Coffey's crimes through her purchases for him and payments on his behalf and through his ability to make cash withdrawals from her bank account, but acceptance of those benefits alone cannot be seen as incitement or encouragement to steal. [M]erely acquiescing in an ongoing criminal activity, without more, does not constitute abetting another's participation in that activity. Horstman,132 Ohio App.3d at 528.
There was evidence at trial that appellant brought another woman home to live with him and Coffey to provide more money for him and that Coffey was upset with this arrangement. This incident spurred Coffey to tell appellant she was crediting funds to her accounts through the computer at work. However, this event did not constitute an encouragement for Coffey to commit the crimes. First, Coffey had already begun crediting funds to her accounts at this time, though she had not told appellant. Furthermore, there is no indication in the record that this other woman's presence coerced Coffey to get more money. Therefore, we do not view the other woman as evidence appellant aided or abetted Coffey.
We find, as a matter of law, the evidence was insufficient to support a finding that appellant was guilty of complicity in the commission of unauthorized access to a computer system or tampering with records. As noted above, there is no evidence appellant was the principal offender in committing these crimes. Therefore, we reverse appellant's convictions on counts two through thirty-one and enter a judgment of acquittal for appellant on these charges.
This holding renders moot appellant's claim that his conviction on these charges contravenes the manifest weight of the evidence.
 2. Receiving Stolen Property. (Count 1)
Appellant concedes that the evidence supports his conviction for receiving stolen property; however, the fifth assignment of error challenges the sufficiency of the evidence that the stolen property was valued at $100,000 or more.[1]
Receiving stolen property (RSP) is defined as receiving, retaining or disposing of property of another, knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense. R.C. 2913.51(A). The degree of the offense is affected by the value of the property involved. RSP is a first degree misdemeanor except as otherwise provided in R.C. 2913.51(B). If the property is valued at $500 or more but less than $5000, RSP is a fifth degree felony; it is a fourth degree felony if the property is valued at $5000 or more but less than $100,000 or involves a motor vehicle or dangerous drug. If the property is valued at $100,000 or more or is a firearm or dangerous ordnance, RSP is a third degree felony.
The jury or the court trying the accused must determine the value of the property involved in a theft offense, including RSP. R.C. 2913.61(A). It is unnecessary for the factfinder to determine the exact value when it determines the property's value is $500 or more; it is sufficient to decide the value falls within the ranges of $500-$4999.99; $5000-$99,999.99, or $100,000 or more.
Viewed in the light most favorable to the state, there was sufficient evidence from which the jury could have found appellant received, retained, or disposed of all of the money Coffey deposited in her bank account and credited to her MasterCard credit card account from October 1997 through April, 1998 and that that amount exceeded $100,000.00. Though appellant claims that he did not actually use most of this money, the jury could have found he was in constructive possession of it when it was credited to accounts over which he had control, with his knowledge. See Statev. Hankerson (1982), 70 Ohio St.2d 87, syllabus; State v. Jackson
(1984), 20 Ohio App.3d 240, 242. Possession need not be exclusive, so the fact that Coffey also had control over these funds is irrelevant.
Viewed in the light most favorable to the state, the evidence supports a finding that appellant received stolen property valued at $100,000 or more. Therefore, we overrule the fifth assignment of error.
 B. Effective Assistance of Counsel
In his second assignment of error, appellant argues his attorney was ineffective because he did not object to the introduction of allegedly irrelevant and prejudicial testimony. The test for determining whether counsel was constitutionally ineffective is essentially the same under both Ohio and federal law:
 First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, whose result is reliable.
Strickland v. Washington (1984), 466 U.S. 668, 687; see, also,State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus.
The court must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. Strickland, supra, at 690.
 A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.
Strickland, supra.
Appellant argues his attorney was ineffective because he did not object to the state's introduction of evidence about appellant's lifestyle, which had no bearing on his guilt or innocence. Counsel's decision not to object to this evidence may well have been a tactical choice, to avoid the appearance of trying to withhold information from the jury. As such, the decision not to object fell within the wide range of professionally competent assistance. Moreover, the evidence of appellant's living and sleeping arrangements and his relationships with the women in his household had such a tenuous connection to the charge of receiving stolen property that it could not have deprived him of a fair trial on that charge. Therefore, we overrule the second assignment of error.
 C. Prosecutor's Closing Argument
Appellant's third assignment of error asserts the prosecution improperly commented on his failure to testify, in violation of his Fifth Amendment rights. During closing arguments, the prosecutor stated:
 Now, you really think — can anyone really think that this was going on in this guy's house connected to money like he was, everyone was working for him and he wasn't working, and he didn't know? I have no idea where this money is coming from. I have no clue. You decide if that's possible. You decide if that's as low a standard as we're going to have in this case, just to allow a person to have all kinds of criminal activity swirling around them and they are going to come in and say I didn't know. Of course there is no testimony that the defendant didn't know. You didn't hear any testimony about that at all.
Appellant objected to this statement, but the court overruled his objection.
This oblique reference cannot be construed as a comment on defendant's failure to testify. The prosecutor only said that there was no evidence supporting the defendant's argument that he did not know the source of the money. The prosecutor then pointed to Coffey's testimony that I told him as support for the state's position that appellant did know. Defendant's knowledge that the funds were stolen was an element of the crime of RSP, which the state bore the burden of proving beyond a reasonable doubt. Taken as a whole, we cannot construe the prosecutor's argument as an effort to raise an inference of guilt from the appellant's decision to remain silent. Therefore, we overrule the third assignment of error.
 D. Jury Instruction Regarding Accomplice-Witness
The fourth assignment of error contends that the court erred by failing to give the jury a special instruction about the testimony of an accomplice witness as required by R.C. 2923.03 and that appellant's attorney was ineffective because he did not request such an instruction. We have found insufficient evidence that appellant was Coffey's accomplice on the charges of tampering with records and unauthorized access to a computer system, so this issue is moot with respect to those charges.
Appellant was the principal offender on the only remaining charge of RSP; he was not alleged to be Coffey's accomplice. Moreover, Coffey was not alleged to be appellant's accomplice. As a general matter, a thief is not an accomplice to receiving stolen property, so no cautionary jury instruction is necessary when he or she testifies. State v. Webb (1991), 72 Ohio App.3d 749, 753. Therefore, we overrule the fourth assignment of error.
 III. CONCLUSION
We find there was insufficient evidence to support appellant's convictions for unauthorized access to a computer system and for tampering with records. Therefore, we sustain the first assignment of error, reverse the trial court's judgment of conviction and enter a judgment of acquittal for appellant on counts 2 through 31 of the indictment. We overrule the remaining assignments of error and affirm appellant's conviction for receiving stolen property.
This cause is reversed with respect to appellant's convictions on counts two through thirty-one. Judgment of acquittal is entered for appellant on each of those charges. Appellant's conviction on count one for receiving stolen property is affirmed.
It is, therefore, considered that said appellant recover of said appellee his costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MICHAEL J. CORRIGAN, J. and JAMES M. PORTER, J. CONCUR
 _______________________ JUDGE, KENNETH A. ROCCO
[1] The state argues that appellant waived any objection on this issue because he did not object to the jury instruction regarding the value of the property involved. The jury was instructed to determine whether the value of the property was or was not in excess of $100,000 if it found appellant guilty of receiving stolen property. Though this instruction may have been incomplete, it was not incorrect. Consequently, appellant's failure to object did not waive his objection to the sufficiency of the evidence of the value of the property.