[Cite as *State v. Lollar-Owens*, 2011-Ohio-3568.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellee

v.

CINDY L. LOLLAR-OWENS

    Appellant

C.A. No.     25538

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CR 09 11 3341

DECISION AND JOURNAL ENTRY

Dated: July 20, 2011

CARR, Presiding Judge.

{¶1} Appellant, Cindy Lollar-Owens, appeals her conviction out of the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2} This case stems from two incidents that occurred on August 17 and 19, 2009, when the home of Ms. Deborah Miller was burglarized. On August 22, 2009, Lollar-Owens pawned several pieces of jewelry, which were subsequently identified as jewelry that was missing from Ms. Miller's home after the burglaries. On November 16, 2009, Lollar-Owens was indicted on one count of receiving stolen property in violation of R.C. 2913.51(A), a felony of the fifth degree. Lollar-Owens pleaded not guilty.

{¶3} The case was tried to the bench on June 1, 2010. At the conclusion of the State's evidence, Lollar-Owens made a motion for acquittal. The trial court denied the motion. Lollar-Owens did not put on a defense. Lollar-Owens was found guilty of receiving stolen property.

{¶4} On October 15, 2010, Lollar-Owens moved this Court for leave to file a delayed appeal, which this court granted on October 20, 2010. Lollar-Owens raises two assignments of error for review.

II.

### ASSIGNMENT OF ERROR I

"THE TRIAL COURT ERRED IN DENYING APPELLANT'S CRIM. R. 29 MOTION AS THE STATE PRESENTED INSUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION."

### ASSIGNMENT OF ERROR II

"THE COURT CREATED A MANIFEST MISCARRIAGE OF JUSTICE AS [THE] VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶5} Lollar-Owens argues that her conviction for receiving stolen property was not supported by sufficient evidence and was against the manifest weight of the evidence. This Court disagrees.

{¶6} Crim.R. 29 provides, in relevant part:

"(A) The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case."

{¶7} A review of the sufficiency of the State's evidence and the manifest weight of the evidence adduced at trial are separate and legally distinct determinations. *State v. Gulley* (Mar. 15, 2000), 9th Dist. No. 19600. "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." Id., citing *State v. Thompkins* (1997), 78 Ohio.St.3d 380, 390 (Cook J., concurring). When reviewing the sufficiency of the evidence, this

Court must review the evidence in a light most favorable to the prosecution to determine whether the evidence before the trial court was sufficient to sustain a conviction. *State v. Jenks* (1991), 61 Ohio St.3d 259, 279.

> "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus.

{¶8}  A determination of whether a conviction is against the manifest weight of the evidence, however, does not permit this Court to view the evidence in the light most favorable to the State to determine whether the State has met its burden of persuasion. *State v. Love*, 9th Dist. No. 21654, 2004-Ohio-1422, at ¶11. Rather,

> "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten* (1986), 33 Ohio App.3d 339, 340.

> "Weight of the evidence concerns the tendency of a greater amount of credible evidence to support one side of the issue more than the other. *Thompkins*, 78 Ohio St.3d at 387. Further when reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a 'thirteenth juror,' and disagrees with the factfinder's resolution of the conflicting testimony. Id." *State v. Tucker*, 9th Dist. No. 06CA0035-M, 2006-Ohio-6914, at ¶5.

This discretionary power should be exercised only in exceptional cases where the evidence presented weighs heavily in favor of the defendant and against conviction. *Thompkins*, 78 Ohio St.3d at 387.

{¶9}  Lollar-Owens was charged with receiving stolen property in violation of R.C. 2913.51(A) which states that "[n]o person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through

commission of a theft offense." Receiving stolen property is a felony of the fifth degree if the value of the property involved is five hundred dollars or more and is less than five thousand dollars. R.C. 2913.51(C).

{¶10} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶11} Fair market value of personal property is defined as "the money consideration that a buyer would give and a seller would accept for property or services, assuming that the buyer is willing to buy and the seller is willing to sell, that both are fully informed as to all facts material to the transaction, and that neither is under any compulsion to act." R.C. 2913.61(D)(3).

{¶12} "Receive is not defined in the statute, but a generally accepted definition of receive is to acquire 'control in the sense of physical dominion over or the apparent legal power to dispose of said property.'" *State v. Brewer* (July 19, 2000), 9th Dist. No. 99CA007483, quoting *State v. Jackson* (1984), 20 Ohio App.3d 240, 242.

{¶13} The Supreme Court of Ohio and the United States Supreme Court have concluded that, "'[p]ossession of recently stolen property, if not satisfactorily explained, is ordinarily a circumstance from which you may reasonably draw the inference and find, in the light of the surrounding circumstances shown by the evidence in the case, that the person in possession knew the property had been stolen.'" *State v. Arthur* (1975), 42 Ohio St.2d 67, 68, quoting *Barnes v. United States* (1973), 412 U.S. 837.

Sufficiency of the Evidence

{¶14}  Lollar-Owens argues that there was insufficient evidence to establish that the value of the property was over $500.00 to warrant a felony conviction and that she knowingly received stolen property.

{¶15}  On August 17 and 19, 2009, Ms. Deborah Miller's home in Akron, Ohio was burglarized.  Televisions, jewelry, a computer, and cars were taken.  In regards to the jewelry, Ms. Miller testified that three gold Omega chains and four rings were taken.  She testified that she did not give anyone permission to take these items from her.  She explained that detectives found her missing jewelry at a pawn store, Pawn Brokers of America, in Akron, Ohio.

{¶16}  Ms. Miller testified that she paid $465.00 for the Patroke Kunzite ring, the receipt for which was admitted into evidence without objection.  She testified that she recently bought one of the chains from her niece for $385.  She also explained that one of the rings was her mother's diamond engagement ring.

{¶17}  Mr. David Johnson testified that he has worked at Pawn Brokers of America for nearly ten years.  He testified that Lollar-Owens was a customer at Pawn Brokers of America for several years.  He testified that Lollar-Owens pawned six pieces of jewelry to the store.  These six pieces were subsequently determined by Sergeant David Garro of the Akron Police Department to have been the jewelry taken from Ms. Miller.

{¶18}  Mr. Johnson testified that customers are required to sign a "police card" for each item that they pawn.  He explained that the 'police cards' contain a description of the item pawned and the amount the pawn store paid for each item.  He testified that these cards are picked up by the Akron Police Department several times a week.  He testified that the "police

cards" for six pieces of jewelry that belonged to Ms. Miller were signed by Lollar-Owens on August 22, 2009.

{¶19} Mr. Johnson further explained that the amount the pawn store pays for each item is "a small percentage" of the actual value of the item, but that it is not part of his job to determine the retail value of items pawned. He testified that the store does not ask customers where their items came from, because it is impossible to determine if pawned items were stolen property.

{¶20} Sergeant Garro testified that the following course of events occurred during his investigation of one of the home invasions of Ms. Miller. He came to believe that Clifford Dion Walters was involved in the home invasions. He discovered one of Ms. Miller's larger chains that had been stolen had been pawned by Ms. Diamond Roberts, who was Mr. Walters' niece. Ms. Roberts told Sergeant Garro that she "pawned [the chain] at the request of Clifford Dion Walters." Upon execution of a search warrant, some of Ms. Miller's property was discovered at Mr. Walters' house. He began investigating all of Mr. Walters' acquaintances and discovered that Lollar-Owens was Mr. Walters' aunt. He then went over pawn lists and discovered the jewelry pawned by Lollar-Owens. He photographed the jewelry at the pawn store and showed the photographs to Ms. Miller. Ms. Miller identified the jewelry as hers and correctly stated the sizes of all the rings, convincing him the jewelry was her property.

{¶21} Lollar-Owens gave a recorded statement to Sergeant Garro which was admitted into evidence without objection. Lollar-Owens admitted that she could not remember how she had acquired the jewelry. Lollar-Owens also acknowledged that Mr. Walters was her nephew.

{¶22} Reviewing the evidence in a light most favorable to the State, this Court concludes that any rational trier of fact could have found the essential elements of the charge of

receiving stolen property were proved beyond a reasonable doubt. See *Jenks* at paragraph two of the syllabus. The receipt for the Patroke Kunzite ring and Ms. Miller's testimony demonstrates that the fair market value of one of the rings was $456.00, since that is the amount Ms. Miller was willing to pay for the ring and the seller accepted. Likewise, Ms. Miller testified that she had recently purchased one of the gold Omega chains from her niece for $385.00. The combined value of these two pieces of jewelry exceeds $500.00. Accordingly, there was sufficient evidence to establish that the fair market value of the jewelry pawned by Lollar-Owens exceeded $500.00.

{¶23} Furthermore, the State proved beyond a reasonable doubt that Lollar-Owens knowingly received stolen property. Ms. Miller testified that the jewelry had been taken from her home without her permission. Lollar-Owens had physical dominion over the jewelry, as she pawned the jewelry a few days after the home invasion. The State presented evidence that the jewelry pawned by Lollar-Owens did belong to Ms. Miller. Lollar-Owens could not satisfactorily explain how she obtained the jewelry. Accordingly, there was sufficient evidence to establish that Lollar-Owens knowingly received stolen property. Lollar-Owens' first assignment of error is overruled.

Manifest Weight of the Evidence

{¶24} Although Lollar-Owens told the police that she lawfully possessed the jewelry that she pawned and that she did not buy it from Mr. Walters or pawn it for him, this Court will not overturn the trial court's verdict on a manifest weight of the evidence challenge only because the trier of fact chose to believe certain witness' testimony over the testimony of others. *State v. Crowe*, 9th Dist. No. 04CA0098-M, 2005-Ohio-4082, at ¶22.

**{¶25}** A thorough review of the record indicates that this is not the exceptional case, where the evidence weighs heavily in favor of Lollar-Owens, and there is no indication that the trial court lost its way and committed a manifest miscarriage of justice in convicting Lollar-Owens of receiving stolen property. The weight of the evidence supports the conclusion that Lollar-Owens knowingly received stolen property. The State presented evidence that the jewelry pawned by Lollar-Owens belonged to Ms. Miller. Lollar-Owens could not explain how she had obtained the jewelry. Ms. Miller testified that she paid $465.00 for one of the rings and $385.00 for one of the chains, the combined total of which exceeds $500.00. Accordingly, Lollar-Owens' conviction for receiving stolen property is not against the manifest weight of the evidence. Lollar-Owens' second assignment of error is overruled.

III.

**{¶26}** Lollar-Owens' assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

WHITMORE, J.
DICKINSON, J.
CONCUR

APPEARANCES:

MARTHA HOM, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.