DECISION AND JOURNAL ENTRY
Defendant Carlos Ortiz appeals his conviction in the Medina County Court of Common Pleas on one count of receiving stolen property. We affirm.
At approximately 8:30 p.m. on the evening of May 29, 1999, Deputy James Cartwright of the Medina County Sheriff's Office was on patrol on State Route 301 in Spencer Township, Medina County, Ohio. As he traveled northbound, he noticed a gray van make a U-turn at the intersection of Route 301 and Old Mill Road. The van then stopped for a long period of time on the side of the road. After traveling a little further north into the village of Seville, Deputy Cartwright turned around and headed south on Route 301. As he turned around, the van turned north onto Route 301; Deputy Cartwright performed a U-turn and followed the van.
Deputy Cartwright noticed that the van had temporary tags. After a check on the van, he learned that the tags were expired and that the operator of the vehicle did not have driving privileges. He then executed a traffic stop.
Deputy Cartwright approached the driver's side. The driver, Defendant, identified himself, but was unable to produce a driver's license. Instead, Defendant gave his social security number and showed proof of insurance and vehicle registration.
Upon looking into the van, Deputy Cartwright saw three other men and asked them for identification. One of the men sat in the front passenger seat. The two other men were crouched in the back of the van, holding a motorcycle designed for off-road use upright between them. There were no other seats in the van's large interior. Deputy Cartwright noted that the motorcycle looked "relatively clean and new." He asked Defendant who owned the motorcycle, and Defendant replied that it was his.
Defendant was cited for not having a valid driver's license and for driving with expired license plates. He was also arrested on an outstanding warrant from Lakewood, Ohio. The van was towed, with the motorcycle still inside, to the Shue's Towing impound lot. The other occupants of the van were released.
On July 21, 1997, Deputy Eric Diekman of the Medina County Sheriff's Office went to the Shue's Towing impound lot to process three vehicles for preliminary steps to the towing service obtaining title to the unclaimed vehicles. One of those vehicles was the van driven by Defendant. After a somewhat involved search, Deputy Diekman learned that the motorcycle in Defendant's van belonged to a James Vargo. The motorcycle was reported stolen on May 17, 1999. Deputy Diekman contacted Vargo's mother, Lola Vargo, who lived in Cleveland, and she retrieved the motorcycle on July 27, 1999.
On August 18, 1999, the Medina County Grand Jury indicted Defendant on one count of receiving stolen property, in violation of R.C. 2913.51. Defendant pleaded not guilty.
A jury trial was held on November 16 and 17, 1999. The State's witnesses were Deputy Cartwright, Deputy Diekman, Lola Vargo, and Detective Warren Walter of the Medina County Sheriff's Office. Defendant testified on his own behalf. The testimony of another potential defense witness, Luis Gurae, was excluded by the trial court as not relevant. After deliberating, the jury found Defendant guilty. The trial court sentenced him accordingly. Defendant timely appealed to this court.
Defendant asserts four assignments of error. We will address each in turn.
 Assignment of Error I [Defendant's] conviction was against the weight and sufficiency of the evidence.
 Defendant argues in his first assignment of error that his conviction was not supported by sufficient evidence and was against the manifest weight of the evidence. We disagree.
We first address Defendant's sufficiency argument. Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A trial court may not grant an acquittal by authority of Crim.R. 29(A) if the record demonstrates that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt. State v. Wolfe
(1988), 51 Ohio App.3d 215, 215-16. In making this determination, all evidence must be construed in a light most favorable to the State. Id.
R.C. 2913.51(A) states: "No person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense." The inquiry is reduced to two questions: whether Defendant received, retained, or disposed of the property of another, and whether Defendant knew or had reasonable cause to believe that the property was obtained by theft.
With regard to retaining property, the Ohio Supreme Court has said: "Possession of stolen property for purposes of the receiving stolen property statute, R.C. 2913.51, may be constructive as well as actual. Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession." State v. Hankerson (1982),70 Ohio St.2d 87, syllabus; see, also, State v. Jackson (1984),20 Ohio App.3d 240, 242.
Viewing the evidence in a light most favorable to the State, there was sufficient evidence that Defendant retained the motorcycle. While he did not have it in his immediate physical possession, the motorcycle was in a van owned and driven by Defendant. When asked who owned the motorcycle, Defendant said that it was his. A reasonable jury could conclude that Defendant possessed the motorcycle.
Absent an admission by a defendant, whether there was reasonable cause for a defendant to know if an item was stolen can only be shown by circumstantial evidence. Hankerson, 70 Ohio St.2d at 92.
 Factors to be considered in determining whether reasonable minds could conclude whether a defendant knew or should have known property has been stolen include:
 "(a) the defendant's unexplained possession of the merchandise, (b) the nature of the merchandise, (c) the frequency with which such merchandise is stolen, (d) the nature of the defendant's commercial activities, and (e) the relatively limited time between the theft and the recovery of the merchandise."
 State v. Davis (1988), 49 Ohio App.3d 109, 112, quoting State v. Brooks (Feb. 27, 1986), Cuyahoga App. No. 50384, unreported, at 6.
Lola Vargo testified that the motorcycle was stolen on May 17, 1999, twelve days before Defendant's arrest, and that a van of an unknown color was involved in the theft. Deputy Cartwright testified that Defendant told him that the motorcycle was his (Defendant's) and that he and his passengers had been riding it that day. No other explanation as to how Defendant came to possess the motorcycle was given to Deputy Cartwright at that time. After the van was impounded, no attempt was made to reclaim either the van or the motorcycle. Also noteworthy was the apparent attempt to drive away from Deputy Cartwright after he turned his cruiser around to investigate the van. See State v. Moorer (June 10, 1987), Summit App. No. 12980, unreported, at 4 (finding an attempt to elude police relevant to whether the defendant knew or should have known that property was stolen).
We conclude that there was sufficient evidence from which the jury could find that Defendant had reasonable cause to believe that the motorcycle was stolen. Accordingly, the conviction was supported by sufficient evidence.
We next address Defendant's manifest weight argument. When a defendant asserts that his conviction is against the manifest weight of the evidence,
 an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
 State v. Otten (1986), 33 Ohio App.3d 339, 340. This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
The only evidence presented to the jury by Defendant was his own testimony. Defendant testified that an acquaintance, Eddy Santiago, said that the motorcycle was his and that Santiago asked him to drive him and the motorcycle to a place in Medina County where he (Santiago) could ride it. Defendant stated that they left Cleveland at about noon and traveled west on Interstate 90 for three or four hours, then turned around and drove to Medina County, looking for the location that Santiago had mentioned. Defendant also testified that Santiago, who was the front seat passenger in the van, told Deputy Cartwright that the motorcycle belonged to him (Santiago). On cross-examination, Defendant admitted to convictions for aggravated assault and burglary.
We cannot say that the jury lost its way in convicting Defendant. The jury was clearly entitled to give no weight to Defendant's claim that he was lost for eight hours trying to get to Medina County from Cleveland. The evidence does not weigh heavily in Defendant's favor, and the conviction is not against the manifest weight of the evidence. The first assignment of error is overruled.
 Assignment of Error II
The trial court erred by not allowing Luis Gurae to testify.
 In his second assignment of error, Defendant argues that the trial court should not have excluded the testimony of a potential witness, Luis Gurae. On the morning of the second day of trial, Defendant sought to introduce the testimony of Gurae. He was not on Defendant's witness list prior to trial and only came forward as a witness that morning. During a voir dire examination of Gurae in camera, it was revealed that Gurae would testify that Eddy Santiago asked Gurae's uncle for permission to store an off-road motorcycle in the uncle's garage and that Gurae had seen and ridden the motorcycle on more than one occasion with Santiago. The trial court excluded the testimony as not relevant and hearsay and because the witness had not been previously disclosed by Defendant. Defendant contends that the trial court's decision was erroneous. We disagree.
"The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." State v. Sage (1987), 31 Ohio St.3d 173, paragraph two of the syllabus. An abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. OhioState Med. Bd. (1993), 66 Ohio St.3d 619, 621. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id.
The trial court correctly excluded as hearsay any testimony from Gurae regarding Santiago's statement to Gurae's uncle. In addition, the remainder of Gurae's testimony was not relevant to the elements of the crime for which Defendant was being tried. Defendant argues that the testimony was relevant because it tended to show that Santiago possessed the motorcycle on May 29, 1999, not Defendant. However, Gurae stated that he saw and rode the motorcycle with Santiago in June or July of 1999. Therefore, the testimony was not relevant to the issue of whether Defendant received, retained, or disposed of the motorcycle on May 29, 1999.
The trial court did not abuse its discretion by excluding Gurae's testimony. The second assignment of error is overruled.
 Assignment of Error III The trial court erred by allowing the cross-examination of [Defendant] about appearing in court late.
 Defendant's third assignment of error deals with a line of questioning during Defendant's cross-examination by the prosecutor. On the morning of the second day of trial, Defendant arrived approximately fifty minutes late. The first order of business that morning was to begin cross-examination of Defendant. The prosecutor then questioned Defendant on why he was late to court that day, whether he had gotten lost, and whether the trial was important to him. The trial court allowed the questioning over objection by Defendant's counsel. Defendant contends that the questioning sought to introduce character evidence, contrary to Evid.R. 404(A). We disagree.
Evid.R. 404(A) prohibits the introduction of evidence regarding the character, or a character trait, of a defendant unless such is first raised by the defendant or involves an essential element of the crime alleged. We conclude that the prosecutor's questioning does not fall within the realm of character evidence. Defendant previously testified that he became lost for eight hours trying to find a location in Medina County. The questioning bore at least some relevance to that issue. We cannot say that the trial court acted with perversity of will, partiality, or the like by permitting the questioning. Therefore, the trial court did not abuse its discretion. The third assignment of error is overruled.
 Assignment of Error IV
The [State] engaged in prosecutorial misconduct.
 In his fourth assignment of error, Defendant raises two instances of alleged prosecutorial misconduct. He contends that these acts denied him a fair trial. Defendant's arguments are not well taken.
"The test for prosecutorial misconduct is whether [the prosecutor's conduct was] improper and, if so, whether [the conduct] prejudicially affected substantial rights of the accused." State v. Lott (1990),51 Ohio St.3d 160, 165. The ultimate issue is whether the defendant was deprived of a fair trial. State v. Apanovitch (1987), 33 Ohio St.3d 19,24. The alleged misconduct must be evaluated in the context of the entire trial. State v. Keenan (1993), 66 Ohio St.3d 402, 410.
Defendant first contends that the questioning discussed in the third assignment of error, as well as comments on that testimony by the prosecutor during closing arguments, constituted prosecutorial misconduct. During the defense closing argument, Defendant's counsel told the jury that Defendant performed much better on the witness stand during his second day than the first day because Defendant was worried and scared. On rebuttal in closing argument, the prosecutor stated:
 [Defendant's counsel] tells you that [Defendant] did a lot better today. He was worried, but — but that he's not a professional witness, and that he's worried and scared about this case.
 He's so worried and scared about this case. So worried and so scared that he didn't bother to show up until ten minutes to 10:00 this morning, in the middle of his testimony. Not even the middle of the trial like we're picking the jury. He was on the witness stand.
 And that's how much he cares about this case, that he showed up fifty minutes late, because he ran into traffic on Route 71 southbound. Southbound. Where, of course, we know everybody goes southbound in the morning and not northbound into Cleveland.
 There was so much traffic coming southbound that he's fifty minutes late this morning. He's so concerned about this case.
The prosecutor later commented on Defendant's prior convictions:
 Felonies don't mean anything to him. He can't remember who the judge is. He can't remember who his probation officer is.
 "Oh, well, all I had to do was, told me I'd get probation and I just see my PO a couple times a week. It was nothing. And, oh, by the way, if I had it to do over again, I'd take that case to trial and hope I could put something over on the jury, that jury, like I'm trying to do here, because I just get probation anyways."
 He told you what he did. He told you he chased a guy down, nearly ran him over with his bike. Chased him into his own house, beat on the door so hard that he put his fist through the window, and somebody inside got cut; continued to chase the guy until he got arrested. But if he had it to do over again, he'd take it to trial.
 He doesn't think he did anything wrong in that case either. This is the guy you're supposed to believe. This is the guy who you're supposed to find not guilty because, "Hey, if I had it to do over again, I'd take it to trial because maybe those stupid jurors won't believe the police officer and they'll believe my ridiculous story."
 No objection was entered during this portion of the closing argument. Defendant asserts that the questioning and the argument constituted prosecutorial misconduct.
We agree that the prosecutor's questioning, and the comments thereon, were improper. Defendant was not criminally charged with coming to court late. The trial court is capable of controlling the proceedings before it, and the prosecutor is not responsible for taking a defendant to task for tardiness like an overzealous school marm. In addition, the prosecutor's comment that Defendant believed jurors to be "stupid" was unwarranted.
Regardless, we do not believe that the improper conduct prejudicially affected the substantial rights of Defendant. The state of the evidence was such that Defendant was not deprived of a fair trial. The fourth assignment of error is overruled.
Defendant's four assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
 ___________________________ LYNN C. SLABY
BAIRD, P. J. WHITMORE, J. CONCUR